61 Cal.Rptr.3d 221 (2007)
152 Cal.App.4th 103
LINEAR TECHNOLOGY CORP., Plaintiff and Appellant,
v.
APPLIED MATERIALS, INC., et al., Defendants and Respondents.
No. H028343.
Court of Appeal of California, Sixth District.
June 18, 2007.
*224 Ruby & Schofield, Allen Ruby and Steven A. Ellenberg, San Jose, for Plaintiff and Appellant.
Skadden, Arps, Slate, Meagher & Flom and Jeffrey G. Randall, Palo Alto, for Defendant and Respondent Applied Materials, Inc.
Duane Morris, Daniel J. Herling and Minh T. Hoang, San Francisco, for Defendant and Respondent Tokyo Electron Ltd.
Irell & Manella, Morgan Chu, Jonathan S. Kagan, Lisa Sharrock Glasser and Laura Brill, Los Angeles, for Defendant and Respondent Novellus Systems, Inc.
ELIA, J.
In this action plaintiff Linear Technology Corporation (Linear) alleged that three equipment manufacturers had sold it equipment that was the source of a patent infringement claim against Linear by a third party. The trial court sustained the demurrers of the three defendants, finding insufficient facts to state a cause of action for fraud or unfair competition and lack of subject matter jurisdiction on the causes of action for breach of contract, implied equitable indemnity, breach of statutory warranty, and breach of the covenant of good faith and fair dealing.
On appeal, Linear maintains that all of its claims were erroneously dismissed because they were properly brought in state court and stated viable causes of action. We agree with the superior court's ruling on the claims of fraud and unfair competition but find merit in Linear's jurisdictional *225 arguments. Accordingly, we will reverse the judgment and remand for further proceedings on the contract-related claims.

Background
Because this appeal arises from the sustaining of a demurrer, we set out the underlying facts as alleged in the operative pleading as well as the procedural history of the litigation. Linear is in the business of designing, manufacturing, marketing, and selling semiconductors and integrated circuits. According to Linear's fifth amended complaint, it purchased semiconductor processing equipment from respondents Applied Materials, Inc., Novellus Systems, Inc. (Novellus), and Tokyo Electron Ltd. (TEL) between July of 1996 and August of 2000.
On January 6, 2001, Texas Instruments, Inc. (abbreviated as "TI" by the parties) brought suit against Linear in the United States District Court, alleging infringement of three of TI's patents. The first two, pertaining to the operation of an automated assembly line, had previously been found "valid, enforceable, and infringed" by a jury in a lawsuit brought in May 1998 by TI against Hyundai Electronics Industries Co., Ltd. (Hyundai). The third patent, according to TI's complaint, was related to the first two. For each of the three TI specifically alleged that Linear was infringing the patent by "using the invention" and "by importing into the United States and making, offering to sell, selling, and using within the United States products made by processes covered by the ... patent, all without authority." TI sought injunctive relief, damages, and attorney fees.
On March 2, 2001, Linear filed third-party complaints in the federal district court against respondents, seeking a defense and indemnification of all liability resulting from TI's action as well as damages for breach of contract, fraud, breach of "warranty against intellectual property claims," and breach of warranty under Commercial Code sections 2714 and 2715. Linear alleged that the equipment it had purchased from respondents subject to a "warranty of non-infringement" was "the subject of TI's underlying patent infringement claims," and that Linear had been using this equipment as the parties had anticipated in the purchase transaction.
TI moved to sever Linear's third-party claims from its lawsuit. TI argued that Linear's cross-action involved different issues, pertained to agreements and events of no interest to TI, and did not relate to TI's claims, which "focus[ed] specifically on Linear's conduct  that is, the way in which Linear manufactures its semiconductor products." TI emphasized that it had not named and did not intend to add any other entities as defendants "because no other parties can provide TI with the complete relief it seeks  a cessation of Linear's use of TI's patented methods." Linear opposed the motion, arguing that the subject patents related to how respondents' wafer-manufacturing equipment operated to move wafers from place to place. Those operations, according to Linear, were designed and built by respondents, whereas Linear's processing of the wafers had nothing to do with the patents at issue.
The district court granted the motion to sever, ruling that none of Linear's causes of action "relate to the question before the Court in the instant case, which is whether the Subject Patents are infringed by [Linear's] processes." The district court further noted that, according to TI, respondents  unlike Linear  "`do not manufacture semiconductor products at all; they only manufacture equipment and machinery.'" The court subsequently clarified that its order was without prejudice, *226 as it did not preclude any separate action Linear might bring against respondents.
Linear did not file any further complaints against respondents in the federal district court. On March 12, 2002, however, Linear initiated the present action against respondents in superior court. Six months later, it settled the lawsuit brought by TI, along with other actions TI had brought against it for patent infringement.
Respondents demurred to Linear's complaint, and to the succeeding amended versions. Finally, the superior court sustained respondents' demurrers to the fifth amended complaint without further opportunity to amend. The court specifically determined that it lacked subject matter jurisdiction to adjudicate the first, second, third, and fifth (contract-related) causes of action and that the facts alleged in the fourth and sixth (fraud and unfair competition) were insufficient to constitute a cause of action. In the ensuing judgment, the court ordered the fourth and sixth causes of action dismissed with prejudice and the remaining claims dismissed without prejudice to Linear's refiling them in an appropriate federal court. This appeal followed.

Discussion

1. Standard and Scope of Review
On appeal from a dismissal following the sustaining of a demurrer, this court reviews the complaint de novo to determine whether it alleges facts stating a cause of action under any legal theory. (Kamen v. Lindly (2001) 94 Cal.App.4th 197, 201, 114 Cal.Rptr.2d 127.) We "give the complaint a reasonable interpretation by reading it as a whole and all its parts in their context." (Moore v. Regents of University of California (1990) 51 Cal.3d 120, 125, 271 Cal.Rptr. 146, 793 P.2d 479; Kamen v. Lindly, supra, 94 Cal.App.4th at p. 201, 114 Cal.Rptr.2d 127.) We assume the truth of all properly pleaded factual allegations as well as matters that may be judicially noticed. (Haggis v. City of Los Angeles (2000) 22 Cal.4th 490, 495, 93 Cal. Rptr.2d 327, 993 P.2d 983; Feitelberg v. Credit Suisse First Boston, LLC (2005) 134 Cal.App.4th 997, 1007, 36 Cal.Rptr.3d 592.)
The plaintiff bears the burden of demonstrating error by the superior court. (Cantu v. Resolution Trust Corp. (1992) 4 Cal.App.4th 857, 880, 6 Cal.Rptr.2d 151.) Our only task is to determine whether the complaint states a cause of action as a matter of law. (Garcia v. Superior Court (1990) 50 Cal.3d 728, 732, 268 Cal.Rptr. 779, 789 P.2d 960; Easton v. Sutter Coast Hospital (2000) 80 Cal.App.4th 485, 490, 95 Cal.Rptr.2d 316.) To show entitlement to reversal the plaintiff must show that the complaint alleged facts sufficient to establish every element of each cause of action. Whether the plaintiff will be able to prove these allegations is not relevant. (Alcorn v. Anbro Engineering, Inc. (1970) 2 Cal.3d 493, 496, 86 Cal.Rptr. 88, 468 P.2d 216.) If the plaintiff failed to plead, or if the defendants negated, any essential element of a particular cause of action, this court should uphold the sustaining of the demurrers. (Kamen v. Lindly, supra, 94 Cal.App.4th at p. 201,114 Cal.Rptr.2d 127.)

2. Subject-Matter Jurisdiction
At issue is the applicability of 28 United States Code section 1338, subdivision (a) (hereafter "section 1338(a)"), which provides that the federal district courts "shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." The primary question presented by respondents' demurrer *227 is whether the first, second, third, and fifth causes of action in the fifth amended complaint ("FAC") arise under patent law such that the case may be heard only in federal court.
The parties appropriately recognize the standard described in Christianson v. Colt Industries Operating Corp. (1988) 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (Christianson). There the United States Supreme Court held that the jurisdiction described in section 1338(a) extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiffs right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." (Id. at p. 809, 108 S.Ct. 2166; see also Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California (1983) 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 [even if state law creates appellant's causes of action, case might still "arise under" the laws of the United States if a well-pleaded complaint established that its right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties]; Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc. (2002) 535 U.S. 826, 829-830, 122 S.Ct. 1889, 153 L.Ed.2d 13 [under "well-pleaded-complaint rule," a counterclaim appearing in the answer cannot establish a district court's "arising under" jurisdiction].) It is the second clause of this test that respondents invoke here. Thus, we must decide whether Linear's right to relief "depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element" of its claims. (Christianson, supra, 486 U.S. at p. 809, 108 S.Ct. 2166.)
"Under the well-pleaded complaint rule, as appropriately adapted to § 1338(a), whether a claim `arises under' patent law `"must be determined from what necessarily appeal's in the plaintiffs statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose."' [Citations.] Thus, a case raising a federal patent-law defense does not, for that reason alone, `arise under' patent law, 'even if the defense is anticipated in the plaintiffs complaint, and even if both parties admit that the defense is the only question truly at issue in the case.' [Citations.]" (Christianson, supra, 486 U.S. at p. 809, 108 S.Ct. 2166, italics added; see also Ballard Medical Products v. Wright (1987) 823 F.2d 527, 531 ["That patent validity or infringement issues may have been injected during the course of an arbitration proceeding in a contract suit forms no basis for asserting that the district court's jurisdiction was based on § 1338 and hence forms no basis for asserting jurisdiction in this court"].) Thus, a state court would not be deprived of subject matter jurisdiction simply "by the fact that, incidentally to one of these defenses, the defendant claimed the invalidity of a certain patent. To hold that it has no right to introduce evidence upon this subject is to do it a wrong and deny it a remedy. Section 711 [the predecessor to section 1338(a)] does not deprive the state courts of the power to determine questions arising under the patent laws, but only of assuming jurisdiction of `cases' arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading  be it a bill, complaint, or declaration  sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The later *228 may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals." (Pratt v. Paris Gas Light & Coke Co. (1897) 168 U.S. 255, 259, 18 S.Ct. 62, 42 L.Ed. 458.)
In various contexts, courts have construed the phrases "arising out of and "arising under" more narrowly than the phrase "relating to." (MHC Financing Ltd. Partnership Two v. City of Santee (2005) 125 Cal.App.4th 1372, 1398, 23 Cal. Rptr.3d 622.) "To constitute [an action arising under patent law], the plaintiff must set up some right, title, or interest under the patent laws, or, at least, make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws." (Pratt v. Paris Gas Light & Coke Co., supra, 168 U.S. at p. 259, 18 S.Ct. 62.) As our own Supreme Court has explained, "It will be noted that [section 1338(a)] states that the federal district court has exclusive jurisdiction of `action[s]' arising under federal patent law. It does not purport to cover all patent right `question[s]' [that] may arise in some other kind of an `action' or `case' such as one based upon common law or equity; the latter actions manifestly are within the jurisdiction of the state courts." (H.J. Heinz Co. v. Superior Court (1954) 42 Cal.2d 164, 172, 266 P.2d 5, citing Pratt v. Paris Gas Light & Coke Co., supra, 168 U.S. 255, 259, 18 S.Ct. 62.) "On the other hand, merely because a claim makes no reference to federal patent law does not necessarily mean the claim does not `arise under' patent law. Just as `a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint' [citations], so a plaintiff may not defeat § 1338(a) jurisdiction by omitting to plead necessary federal patent-law questions." (Christianson, supra, 486 U.S. at p. 809, fn. 3, 108 S.Ct. 2166.)
"The line between cases that `arise under' [the patent laws] and those that present only state law contract issues is `a very subtle one,' [citation] and the question leads down `one of the darkest corridors of the law of federal courts and federal jurisdiction.' [Citation.]" (Arthur Young & Co. v. City of Richmond (1990) 895 F.2d 967, 969, fn. 2.) Nevertheless, "[previous opinions establish that `[a] case does not arise under the patent laws' merely because questions of patent law may arise in the course of interpreting a contract ... The fact that an issue of patent law may be relevant in the interpretation of a contractual dispute `cannot possibly convert a suit for breach of contract into one "arising under" the patent laws as required to render the jurisdiction of the district court based on section 1338.' [Citations.]" (Regents of University of Minnesota v. Glaxo Wellcome, Inc. (1999) 44 F.Supp.2d 998, 1005-1006; see also Aronson v. Quick Point Pencil Co. (1979) 440 U.S. 257, 262, 99 S.Ct. 1096, 59 L.Ed.2d 296 ["Commercial agreements traditionally are the domain of state law. State law is not displaced merely because the contract relates to intellectual property which may or may not be patentable"]; see also Miller v. Lucas (1975) 51 Cal.App.3d 774, 776, 124 Cal.Rptr. 500 [state court jurisdiction founded on contract or tort is not necessarily defeated merely because "existence, validity or construction of a patent may be involved"].)
Guided by these principles, we first examine the allegations of the FAC, since "[a] court must review and analyze the plaintiffs pleadings, with special attention directed to the relief requested by the plaintiff, in making the determination as to whether a cause of action arises under the patent laws. . . ." (Air Prod. & Chem., Inc. *229 v. Reichhold Chem., Inc., (Fed.Cir.1985) 755 F.2d 1559, 1562; see also Board of Regents, University of Texas System, ex rel. University of Tex. at Austin v. Nippon Telephone and Telegraph Corp. (Fed.Cir. 2005) 414 F.3d 1358, 1362 [patent law issues not essential to the resolution of state law claim of tortious interference with prospective business relations].) This precept dovetails with the rules for evaluating demurrers, which, as discussed above, require acceptance of the truth of all material facts alleged in the operative complaint except where contradicted by judicially noticeable facts. (Evans v. City of Berkeley (2006) 38 Cal.4th 1, 6, 20, 40 Cal.Rptr.3d 205, 129 P.3d 394; Financial Corp. of America v. Wilburn (1987) 189 Cal.App.3d 764, 768-769, 234 Cal.Rptr. 653.)
In the cause of action for breach of contract, Linear asserted that the "Purchase Order Contracts," in which it had agreed to buy semiconductor processing equipment from respondents, contained written promises that respondents would "defend, indemnify and hold [Linear] harmless against `all claims, losses, expenses, damages, causes of action and liabilities of every kind and nature including without limitation reasonable attorneys fees' arising out of [that seller's] warranty that [Linear's] `purchase, installation and/or use of the goods covered hereby will not result in any claim of infringement ... of any patent ...'"[1] Linear averred that it had used the equipment as it was designed to be used, and as each defendant intended it to be used. But respondents breached the purchase order contracts by failing to defend and indemnify Linear and hold it harmless "from claims of infringement."[2] More specifically, TI's lawsuit, according to Linear, was a claim "that plaintiffs use of the equipment infringed its patents." Because of respondents' refusal to defend Linear, indemnify it, or hold Linear harmless, Linear had been forced to pay "a huge sum of money" to defend itself and settle the claims.
Notwithstanding this allegation, it is clear from judicially noticeable facts that TI did not claim that respondents' equipment had infringed its "Head Patents." Nor did it allege that Linear's use of the equipment had infringed these patents. Instead, TI sued Linear for infringing a process involved in manufacturing semiconductors. Two of the Head Patents pertained to "segmented asynchronous operation of an automated assembly line," and the third involved a "method of manufacturing a product from a workpiece."
The representation of the third-party claim is thus contradicted by the judicially noticeable complaint in TI's lawsuit against Linear.[3] That does not mean, however, that Linear's lawsuit belongs exclusively *230 in federal court; it means only that our review encompasses the allegations of TI's complaint where they contradict Linear's description of those allegations in the FAC. In order to recover for breach of contract, Linear will have to prove that respondents promised to indemnify Linear and hold it harmless from claims arising from its use of the equipment respondents sold to it. The preliminary issue presented in this appeal is whether Linear can meet this burden without engaging the superior court in a substantial question of federal law.
We believe it can. The first cause of action in the FAC sounds in contract. The only issue bearing upon the nature of TI's process patents is whether the infringement of those patents arose from Linear's use of the equipment it purchased from respondents. The determination of that question does not necessitate resolution of a substantial question of federal law, but entails only factual questions  in particular, what was the nature of each patent and was there a causal connection between Linear's use of the processing equipment and its infringement of TI's patents. TI's focus on Linear's conduct (its manufacturing process) also is not controlling. That TI had not named other defendants shows only that TI was uninterested in which tools Linear had used in infringing its process patents; it simply wanted relief for the infringement itself. The subject of the present action is more closely focused on how that infringement came to pass  specifically, whether it arose from the use of respondents' products.
The same issues inhabit the claims of breach of the covenant of good faith and fair dealing and implied equitable indemnity. In the latter cause of action Linear alleged only that respondents had a duty to indemnify Linear for any consideration Linear was obligated to pay under the terms of the settlement with TI. Whether such duty existed depends on the application of state law, not federal patent law. Respondents invoke the principle that there can be no indemnity without liability. But this is not a situation in which the indemnitor and indemnitee are concurrent tortfeasors who are jointly liable to a third party. The implied-indemnity allegation in the FAC, though vaguely worded, appears to be based on the contractual relationship between Linear and respondents.[4]
The third cause of action is for breach of warranty under Commercial Code section 2312, subdivision (3). This provision states, in pertinent part: "Unless otherwise agreed a seller who is a merchant regularly dealing in goods of the kind warrants that the goods shall be delivered free of the rightful claim of any third person by way of infringement or the like...." Respondents' liability on this claim depends on the application of state law, not patent law. The Legislature's use of the term "rightful claim" is not dispositive, as the statute expressly recognizes an exception for agreements to the contrary. Here the parties' contracts, as described in the FAC, were expansive in embracing a warranty that the use of the purchased equipment would not result in any claim of infringement. Whether that contingency occurred is a matter for further resolution by means of trial or other disposition such as summary adjudication.
The cases discussed by the parties do not alter this conclusion. In Cover v. Hydramatic Packing Co. v. Sea Gull Lighting, Inc. (Fed.Cir.1996) 83 F.3d 1390, cited *231 by Linear, the issue was whether federal patent law directly conflicted with, and therefore preempted, Pennsylvania's commercial law, which was identical to that of California's warranty provision, Commercial Code section 2312, subdivision (3). Both the indemnitor and the indemnitee had been sued by and settled with the patent holder. In resisting the indemnitee's cross-complaint, the indemnitor argued that there had to be a "rightful claim" of infringement for the commercial statute to apply. The Court of Appeals rejected the argument, finding no conflict between the state law and 35 United States Code section 287(a): "Once the patentee left the picture, so did § 287(a). There is simply nothing on the face of § 287(a) that pertains to anyone but the infringer and the patentee. At issue, therefore, is the legal relationship between two contracting parties, and it is [13 Pa. C.S.A.] § 2312(c) which defines this relationship." But the Cover court's focus was on preemption and specifically on the last clause of the statute, which pertained to buyers who furnish specifications to the seller of the subject goods. The court did add, however, that to adopt the indemnitor's "rightful claim" argument "would not lead to judicious public policy inasmuch as parties would eschew settlement and be forced to go to trial to discern whether a 'rightful claim' exists under federal patent law. We cannot lend our imprimatur to such a policy." (Id. at p. 1394.)
In 84 Lumber Co. v. MRK Tech., Ltd. (W.D.Pa.2001) 145 F.Supp.2d 675, cited by respondents, the plaintiff bought laser scanning equipment from the defendant manufacturers and a distributor for use in its bar code scanning system. The plaintiff was later sued for patent infringement by a third party and settled that case. Addressing its jurisdiction to consider the plaintiffs suit for breach of the implied warranty under the same Pennsylvania statute, the federal district court ruled that the claim belonged in federal court. The court noted the "rightful claim" language of the statute and rejected the plaintiffs suggestion that the phrase meant "a reasonable belief that the alleged infringement will be upheld." (Id. at p. 679.) The court agreed with the statement in Cover that "a rightful claim does not require a finding of absolute patent liability." (Id. at p. 680.) It declined to define the phrase, but it nonetheless held that the plaintiffs claims could not be addressed without some evaluation of the merit of the third party's infringement claim. The plaintiffs "subjective belief and representation that it thought [the patent holder] was likely to win" was insufficient to impose liability on the defendants. (Ibid.) The 84 Lumber court, however, did not address the effect of the settlement of the third-party action. Nor did it discuss or even describe the specific terms of the purchase agreements between the parties. Presumably in that case it was not "otherwise agreed" that any claim arising out of the plaintiffs use of the scanning equipment would trigger indemnity obligations.
The other cases on which respondents rely in support of demurrer are likewise distinguishable on their material facts. In Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc. (Fed.Cir.1993) 986 F.2d 476 the defendant patent holder claimed infringement of its patent by the plaintiff. In Scherbatskoy v. Halliburton Co. (5th Cir.1997) 125 F.3d 288, a finding that the defendant licensee had breached a patent license agreement and owed additional royalties required a determination of whether the licensee's subsidiary had infringed the plaintiffs' patent. And in U.S. Valves v. Dray (Fed.Cir.2000) 212 F.3d 1368, the defendant sold valves allegedly covered by his patented technology, which he had licensed exclusively to the plaintiff. *232 A central issue in the case was whether the defendant's sale to a third party was in fact covered by the licensed patents.
California cases also do not compel dismissal of Linear's claims. In Holiday Matinee v. Rambus (2004) 118 Cal.App.4th 1413, 13 Cal.Rptr.3d 766, the complaint contained the assertion that the defendant was not entitled to charge any royalty for certain technologies because any patent protection the defendant had obtained for the technologies had been procured through fraud. The plaintiff also alleged that the defendant was aware that certain technology patents were unenforceable due to the nature of the defendant's fraud. Further, the defendant knew that if its fraudulent conduct were exposed, it could not reasonably expect to succeed in litigation to enforce its patent. (Id. at p. 1427, 13 Cal.Rptr.3d 766.) In other words, "at the heart of each of Holiday's claims was the assertion that Rambus had unfairly charged royalties, threatened litigation, and filed baseless lawsuits, all based upon patents that were invalid and unenforceable because they `were obtained through breaches of contract' ... and fraudulent misrepresentations...." (Id. at p. 1426, 13 Cal.Rptr.3d 766.) Because "each of Holiday's claims required a showing that Rambus's patents were invalid and unenforceable" against the defrauded manufacturers, we concluded that Holiday's right to relief necessarily depended on resolution of a substantial question of federal patent law, thus bringing the action within the exclusive jurisdiction of the federal courts. (Id. at pp. 1426-1427, 13 Cal.Rptr.3d 766.) In the case before us, however, the validity or unenforceability of TI's patent is not a substantial issue that must be resolved in order to determine respondents' contractual liability.
Heppler v. J.M. Peters Co. (1999) 73 Cal.App.4th 1265, 87 Cal.Rptr.2d 497 involved a cross-complaint for indemnity by a contractor against various subcontractors arising out of construction defects. The court recognized that "parties to an indemnity contract have great freedom of action in allocating risk, subject to certain limitations of public policy." (Id. at p. 1277, 87 Cal.Rptr.2d 497.) The court acknowledged the principles articulated in Rossmoor Sanitation, Inc. v. Pylon, Inc. (1975) 13 Cal.3d 622, 633, 119 Cal.Rptr. 449, 532 P.2d 97, where the Supreme Court stated: "[T]he question whether an indemnity agreement covers a given case turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control. When the parties knowingly bargain for the protection at issue, the protection should be afforded. This requires an inquiry into the circumstances of the damage or injury and the language of the contract; of necessity, each case will turn on its own facts." The Heppler court applied this guidance to the context and specific terms of the indemnity agreements at issue and found that indemnitor fault was a prerequisite for indemnity. The case before us, however, presents a different factual context and contractual provisions. The purchase orders at issue here allegedly provided for broad indemnity and defense obligations in the event that Linear was the object of a claim arising from its use of the purchased equipment.
Similarly, Peter Culley & Associates v. Superior Court (1992) 10 Cal.App.4th 1484, 13 Cal.Rptr.2d 624 involved questions of indemnity arising from the, negligence of the indemnitor, a consulting structural engineer on a condominium development project. When the indemnitee, an architectural firm, settled an action brought against it by the joint venture developer, the indemnitee sued the indemnitor to enforce the indemnity agreement. The appellate court, after examining the effect of *233 Civil Code section 2778, subdivision (5), on a contractual indemnity provision, held that an indemnitee must show that liability is covered by the applicable contract and that liability existed, as well as the extent of that liability. "The settlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable...." (Id. at p. 1497, 13 Cal. Rptr.2d 624.) Determining the ultimate issues at trial would not necessarily require resolution of a substantial question of federal patent law. The Culley court emphasized that a critical component of the proper analysis was the meaning of the indemnity clause in the parties' contract. Here, as we have already observed, the contracts at issue are alleged to provide for a defense and indemnity for all claims arising out of Linear's use of the purchased equipment.
We thus are not convinced that the claims based on the purchase contracts in this case must be adjudicated in federal court. It is not necessary to determine whether Linear actually infringed the patent of TI, an entity not involved in this action. If the matter goes to trial, the central question will be only whether respondents breached the contract with Linear when they failed to defend and indemnify Linear upon TI's action against it. This issue turns upon a judicial construction of the purchase orders in dispute and the application of contract law to the specific facts surrounding the controversy. Accordingly, we conclude that the contract-based causes of action can proceed in state court based on the facts alleged in the operative complaint.
Because the superior court dismissed these claims based solely on lack of subject matter jurisdiction, it did not determine whether the FAC failed to state a cause of action for the other reasons articulated in respondents' respective demurrers. We believe that the superior court should be allowed the opportunity to address these arguments in the first instance and, if it sustains the demurrers on any other grounds, to determine whether to grant leave to amend. We express no opinion whatsoever as to whether this action can survive any further demurrer or summary judgment motion that might be brought; nor do we purport to suggest whether, if additional demurrers are sustained, any further leave to amend should be granted, as this matter is for the superior court to determine in the exercise of its sound discretion.

3. Fraud and Unfair Competition
In the fourth cause of action Linear alleged that during the negotiations over the equipment purchases, respondents knew that TI had successfully sued Hyundai for infringement of the same process patents. By concealing both the claim and the verdict from Linear, respondents engaged in "an intentional deceit by way of concealment of material facts known to Defendants with the intention on the part of Defendants to deprive [Linear] of property or legal rights or otherwise causing injury." According to the sixth cause of action, the sale of their equipment without informing their customers about the Hyundai litigation constituted "unfair, fraudulent and misleading business practices" within the meaning of the Unfair Competition Law (UCL), Business and Professions Code section 17200, et. seq. The superior court sustained the demurrers to these claims on the ground that Linear had failed to allege facts sufficient to state a cause of action. We agree.
Civil Code section 1710, subdivision (3), defines "deceit" to include the "suppression of a fact, by one who is bound *234 to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." "[T]he elements of an action for fraud and deceit based on concealment are: (1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." (Marketing West, Inc. v. Sanyo Fisher (USA) Corp. (1992) 6 Cal.App.4th 603, 612-613, 7 Cal.Rptr.2d 859; accord, Hahn v. Mirda (2007) 147 Cal.App.4th 740, 54 Cal.Rptr.3d 527.) Emphasizing discrepancies between the allegations and the facts of the Hyundai litigation, respondents maintain that they had no duty to disclose the existence of the Hyundai litigation.[5]
"In transactions which do not involve fiduciary or confidential relations, a cause of action for non-disclosure of material facts may arise in at least three instances: (1) the defendant makes representations but does not disclose facts which materially qualify the facts disclosed, or which render his disclosure likely to mislead; (2) the facts are known or accessible only to defendant, and defendant knows they are not known to or reasonably discoverable by the plaintiff; (3) the defendant actively conceals discovery from the plaintiff." (Warner Constr. Corp. v. City of Los Angeles (1970) 2 Cal.3d 285, 294, 85 Cal.Rptr. 444, 466 P.2d 996 [fns. omitted]; accord, Marketing West, Inc. v. Sanyo Fisher (USA) Corp., supra, 6 Cal.App.4th at p. 613, 7 Cal. Rptr.2d 859; see also Goodman v. Kennedy (1976) 18 Cal.3d 335, 347, 134 Cal.Rptr. 375, 556 P.2d 737 [no duty of disclosure supporting fraud absent allegation of representation that was "likely to mislead for want of the disclosures," active concealment of undisclosed matters, or knowledge of the materiality of the omitted matters or their inaccessibility to the plaintiff].) "[M]ere conclusionary allegations that the omissions were intentional and for the purpose of defrauding and deceiving plaintiffs and bringing about the purchase ... and that plaintiffs relied on the omissions in making such purchase are insufficient [to show fraud by concealment]." (Goodman v. Kennedy, supra, 18 Cal.3d at p. 347, 134 Cal.Rptr. 375, 556 P.2d 737.)
Here, Linear did not allege that any defendant made a representation that was incomplete or misleading;[6] it did *235 not assert concealment of material facts known or accessible only to defendants; and it did not claim active concealment preventing discovery of the litigation. The FAC stated only that during the negotiations respondents' representatives knew about the Hyundai litigation and failed to tell Linear about it. In opposing the demurrers, Linear argued that a duty existed under Commercial Code section 2312, subdivision (3), but that statutory basis for the fraud cause of action was not alleged in the FAC.[7] Fraud must be pleaded with specificity. (Lazar v. Superior Court (1996) 12 Cal.4th 631, 644-645, 49 Cal. Rptr.2d 377, 909 P.2d 981; Small v. Fritz Companies, Inc. (2003) 30 Cal.4th 167, 184, 132 Cal.Rptr.2d 490, 65 P.3d 1255.) Linear also asserted a duty to disclose based on respondents' affirmative representation that the use of the equipment would not result in a claim of patent infringement. The warranty alleged in the complaint did not, however, amount to a misrepresentation of fact; it was only a promise to take certain remedial steps upon the occurrence of a specified event, a prediction relating to the transaction between respondents and this purchaser. Thus, even if TI's lawsuit against Hyundai can fairly be characterized as a claim arising from Hyundai's use of respondents' equipment, disclosure of that fact was not required by the promises made in the transactions with Linear. Linear's cause of action fails to state a viable claim of deceit under Civil Code section 1710.
The cause of action for unfair competition likewise cannot be sustained on the allegations of the FAC. Business and Professions Code section 17200 ("section 17200") defines "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice...." The factual basis of Linear's claim was that respondents "have never informed any of their customers or prospective purchasers of their respective [products] of (i) the fact that in the Hyundai Litigation, TI had claimed that the use of their respective equipment infringed the `Head Patents', and (ii) that the jury ultimately found that Hyundai used the Defendants' respective equipment to infringe those patents." Those facts, according to Linear, implicate "the unfairness element of the statute in addition to the fraud element." TI did not claim infringement by Hyundai based on the use of respondents' equipment. But even if that use is broadly viewed as the underlying source of the TI litigation, Linear's claim cannot succeed.
The scope of section 17200 is broad, encompassing "`"`anything that can properly be called a business practice and that at the same time is forbidden by law.'"' ... It governs `anti-competitive business practices' as well as injuries to consumers, and has as a major purpose `the preservation of fair business competition.'" (Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527.) Furthermore, "a practice may be deemed unfair even if not specifically proscribed by some other law." (Ibid.) "In drafting the act, the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity. As a result, to state a claim under the [UCL] one need not plead and prove the elements of a tort. Instead, one need only show that `members of the public are likely *236 to be deceived.'" (Bank of the West v. Superior Court (1992) 2 Cal.4th 1254, 1266-1267, 10 Cal.Rptr.2d 538, 833 P.2d 545; see also Kasky v. Nike, Inc. (2002) 27 Cal.4th 939, 951, 119 Cal.Rptr.2d 296, 45 P.3d 243.)[8]
When an unfair-competition claim is based on an alleged fraudulent business practice  that is, a practice likely to deceive a reasonable consumer  "a plaintiff need not plead the exact language of every deceptive statement; it is sufficient for [the] plaintiff to describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme." (Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 212-213, 197 Cal.Rptr. 783, 673 P.2d 660.) The allegation "may be based on representations to the public which are untrue, and `"also those which may be accurate on some level, but will nonetheless tend to mislead or deceive. . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under"' the UCL." (McKell v. Washington Mutual, Inc. (2006) 142 Cal.App.4th 1457, 1471, 49 Cal.Rptr.3d 227.) Unfairness under section 17200 has been described as violating established public policy or "is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." (Id. at p. 1473, 49 Cal.Rptr.3d 227; see also Paulus v. Bob Lynch Ford, Inc. (2006) 139 Cal.App.4th 659, 680, 43 Cal.Rptr.3d 148.)[9] Another division of the same appellate district, on the other hand, has defined "unfairness" by a three-part test: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." (Camacho v. Automobile Club of Southern California (2006) 142 Cal.App.4th 1394,1403, 48 Cal.Rptr.3d 770; accord, Brothers v. Hewlett-Packard Co. (N.D.Cal.2007) 2007 WL 485979.) Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires "consideration and weighing of evidence from both sides" and which usually cannot be made on demurrer. (McKell v. Washington Mutual, Inc., supra, 142 Cal.App.4th at. pp. 1472, 1473, 49 Cal. Rptr.3d 227; see also People v. McKale *237 (1979) 25 Cal.3d 626, 635, 159 Cal.Rptr. 811,602 P.2d 731.)
In this case, however, the superior court properly dismissed this cause of action oh demurrer for reasons independent of the evidence that may be presented. The UCL was enacted "to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (Kasky v. Nike, Inc., supra, 27 Cal.4th at p. 949, 119 Cal.Rptr.2d 296, 45 P.3d 243; see also Paulus v. Bob Lynch Ford, Inc., supra, 139 Cal.App.4th at p. 676, 43 Cal.Rptr.3d 148.) Here, the alleged victims are neither competitors nor powerless, unwary consumers, but Linear and other corporate customers in Silicon Valley, "each of which presumably has the resources to seek damages or other relief ... should it choose to do so." (Rosenbluth International, Inc. v. Superior Court (2002) 101 Cal.App.4th 1073, 1078, 124 Cal.Rptr.2d 8440 And the source of the fraudulent and unfair practices is the misrepresentation made in purchase orders between respondent sellers and Linear, in which each seller warranted that no infringement claim would result from Linear's use of that seller's equipment. Thus, contrary to Linear's representation, the harm it suffered did result from contracts specifically with the plaintiff. The other alleged victims likewise are sophisticated corporate customers who have entered or will enter their own contracts with respondents, although neither these victims nor the contracts are identified in the complaint. In these circumstances, where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks. (Id. at pp. 1077-1079, 124 Cal.Rptr.2d 844.) "By purporting to act as their self-appointed representative and asserting claims on their behalf in a UCL action, [Linear] could in fact deprive [respondents'] alleged victims of the individual opportunity to seek remedies far more extensive than those available under the UCL." (Id. at p. 1079, 124 Cal.Rptr.2d 844.) Thus, to the extent that Linear purports to represent other customers, permitting its UCL claim would raise "`serious fundamental due process considerations.'" (Ibid., quoting Bronco Wine Co. v. Frank A. Logoluso Farms (1989) 214 Cal.App.3d 699, 720, 262 Cal. Rptr. 899.) The Rosenbluth court did not limit its holding to allegations of fraudulent conduct. Accordingly, notwithstanding the wide range of conduct that can be deemed "unfair" within the meaning of section 17200, the reasoning of Rosenbluth is equally fitting in cases involving allegations of unfairness under the UCL. The superior court properly sustained respondents' demurrers to the claim of unfair competition for failure to state a viable cause of action.

Disposition
The judgment is reversed, and the matter is remanded for further proceedings solely on the first, second, third, and fifth causes of action in Linear's fifth amended complaint. In the interests of justice, the parties shall bear their own costs on appeal.
PREMO, Acting P.J., and DUFFY, J., concur.
NOTES
[1] The allegation against Novellus did not include the term "defend" in the alleged promise.
[2] Inexplicably, Applied Material's breach allegedly consisted of failing to indemnify and hold Linear harmless, but not failing to defend, whereas Novellus allegedly breached its contract by failing to defend Linear, though its contract allegedly did not include a defense obligation.
[3] We have not taken judicial notice of the factual assertions in TI's motion to compel answers to interrogatories and motion to sever Linear's claims. Those representations are not within the scope of judicially noticeable matters described in Evidence Code section 452. (See Bach v. McNelis (1989) 207 Cal. App.3d 852, 865, 255 Cal.Rptr. 232 [court may take judicial notice of the existence of documents in a court file but not the truth of facts asserted in pleadings and affidavits contained therein].) Furthermore, the extent to which TI was interested in the precise details of Linear's infringement is not relevant to the factual issue raised in Linear's complaint against respondents.
[4] Whether the principle that "there can be no indemnity without liability" applies to claims for implied contractual indemnity is an issue currently before the Supreme Court. (See Prince v. Pacific Gas & Elec. Co., S149344.)
[5] Linear specifically alleged that TI's lawsuit against Hyundai was based on the claim that the Head Patents "were infringed by Hyundai's use of the same products [that] Defendants later sold to [Linear]." Applied Materials and Novellus emphasize that TI's lawsuit against Hyundai was based on Hyundai's use of the patented process, not the use of their equipment. Novellus also notes that it could not possibly have concealed the jury verdict against Hyundai because Linear purchased Novellus's equipment before that verdict was issued. TEL insists that the machinery it supplied to Hyundai was different from the equipment it sold to Linear.
[6] Vega v. Jones, Day, Reavis & Pogue (2004) 121 Cal.App.4th 282, 17 Cal.Rptr.3d 26, cited by Linear, is inapposite. There the defendant purported to provide a transaction disclosure but provided only a sanitized version of the disclosure schedule, deliberately omitting the existence of material "toxic stock" provisions. (Id. at p. 292, 17 Cal.Rptr.3d 26.) Linear did not similarly allege that respondents had made a partial disclosure that omitted material facts.
[7] In any event, this statute does not provide a basis for requiring disclosure of facts, unlike the statute at issue in Lovejoy v. AT & T (2004) 119 Cal.App.4th 151, 14 Cal.Rptr.3d 117, on which Linear relies. That case pertained to Public Utilities Code section 2889.5, which expressly mandates specific disclosures to customers before telephone companies may make changes to the customer's telephone service.
[8] For this reason, we reject TEL's assertion that the sixth cause of action cannot survive demurrer because it did not plead the underlying fraud with particularity.
[9] In accordance with this test, "the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim  a weighing process quite similar to the one enjoined on us by the law of nuisance. [Citations.] While this process is complicated enough after a hearing in which the defendant has revealed the factors determining the utility of his conduct, it is really quite impossible if only the plaintiff has been heard from, as is the case when it is sought to decide the issue of unfairness [under the UCL] on demurrer. Therefore  since the complaint is unlikely to reveal defendant's justification  if that pleading states a prima facie case of harm, having its genesis in an apparently unfair business practice, the defendant should be made to present its side of the story. If, as will often be the case, the utility of the conduct clearly justifies the practice, no more than a simple motion for summary judgment would be called for." (Motors, Inc. v. Times Mirror Co. (1980) 102 Cal.App.3d 735, 740, 162 Cal. Rptr. 543, fn. omitted; accord, Schnall v. Hertz Corp. (2000) 78 Cal.App.4th 1144, 1167, 93 Cal.Rptr.2d 439.)