Filed 2/23/23  Ameritemps of PA v. U.S. Continental Marketing CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| AMERITEMPS OF PA, INC.,<br><br>      Plaintiff, Cross-Defendant and Appellant,<br><br>      v.<br><br>U.S. CONTINENTAL MARKETING, INC.,<br><br>      Defendant, Cross-Complainant and Respondent. | D080514<br><br><br>(Super. Ct. No. RIC1902823) |

APPEAL from a judgment of the Superior Court of Riverside County, Irma Poole Asberry, Judge.  Affirmed.

Ellis Law Group and Mark E. Ellis for Plaintiff, Cross-Defendant and Appellant.

Law Offices of Steven R. Lovett and Steven R. Lovett for Defendant, Cross-Complainant and Respondent.

Ameritemps of PA, Inc., (Ameritemps PA), a temporary staffing agency, appeals from a judgment entered after a bench trial.  The trial court ruled that Ameritemps PA must indemnify one of its contracting employers, U.S.

Continental Marketing, Inc. (USCM), for expenses and damages USCM incurred in defending an employment lawsuit (Jimenez lawsuit) brought by a temporary employee, Elvia Velasco Jimenez, who was placed with USCM by Ameritemps PA.  In its appeal, Ameritemps PA primarily argues that (1) USCM did not give it adequate notice of the Jimenez lawsuit to trigger its indemnity obligation, and (2) there is no substantial evidence to support the trial court's finding that it is the "alter ego" of Ameritemps West, Inc. (Ameritemps West), which it alleges is the responsible employer.

We conclude that Ameritemps PA has forfeited its notice argument by failing to address the evidence and theory relied on by the trial court in its ruling on the issue.  We find it unnecessary to determine whether there is sufficient evidence to support the "alter ego" finding, because we conclude that it could not have been prejudicial to Ameritemps PA in light of the court's uncontested factual findings that Ameritemps PA was Jimenez's direct employer and was liable based on its own negligence in screening and terminating her.  Because we reject Ameritemps PA's other claims of error, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.    *Trial Evidence*

Ameritemps PA is a staffing agency that provides temporary employees to various businesses.  USCM is a contract manufacturer of chemical products and occasionally relies on temporary employees in its workforce. Ameritemps PA and USCM entered into a staffing agreement in June 2015 for Ameritemps PA to provide temporary employees to USCM.  The staffing agreement was in effect from June 23, 2015 to June 23, 2016.

Section 11 of the staffing agreement provides that Ameritemps PA would defend, indemnify, and hold USCM harmless from all claims, losses,

2

and liabilities (including reasonable attorneys' fees) to the extent caused by Ameritemps PA's breach of the agreement; its failure to discharge its duties set forth in the agreement; or the negligence, gross negligence, or willful misconduct of Ameritemps PA in the discharge of those duties and responsibilities.

Section 14 provides that, as a condition precedent to indemnification, the party seeking indemnification must inform the other party within three business days after it receives notice of any claim, loss, liability or demand for which it seeks indemnification from the other and must cooperate in the investigation and defense of such matter.

In 2015, Elvia Velasco Jimenez, a temporary employee assigned to USCM by Ameritemps PA, reported that she was being sexually harassed by a coworker on the job. USCM and Ameritemps PA investigated and held meetings with Jimenez, her coworker, and other employees. USCM and Ameritemps PA could not corroborate her allegations.

Steven Toloday, chief financial officer of USCM, testified that before Jimenez filed her lawsuit, she complained to USCM's human resources manager that she was being sexually harassed. USCM brought the complaint to the attention of Ameritemps PA in writing, and Toloday had a conversation about it with Jesse Proctor, owner and president of Ameritemps PA. There were also complaints against Jimenez, including "bullying," which prompted USCM to request that Ameritemps PA transfer her to a different assignment. Instead of transferring her, however, Ameritemps PA terminated Jimenez's employment because "they didn't want to deal with her." USCM also learned that Ameritemps PA failed to screen Jimenez adequately and that she was "undocumented and didn't have a right to work

3

in the U.S." Valid work authorization "was something [USCM] required [the] temporary agency to screen."

Shortly after her termination, Jimenez filed a wrongful termination lawsuit against USCM, Ameritemps West and the USCM employee who allegedly harassed her. The Jimenez lawsuit ultimately settled after having gone through trial and subsequent appeal and remand to the trial court.

David Williams, owner and president of USCM, testified that Ameritemps PA and Ameritemps West are "one and the same." Michael Pruitt, USCM's director of operations, testified about his understanding that Ameritemps West was a "franchise" of Ameritemps PA. Proctor testified that Ameritemps PA was "going to establish a franchise in California under an ordinary agreement of the franchise." When that did not work out, he "tried to make other business arrangements, because I already had money invested flying out there and doing some things." All invoices for services rendered by Ameritemps West were invoiced by Ameritemps PA. The two entities shared at least one employee, Leilani Williams, who "carried a dual role for both companies." Additionally, both companies shared the same phone number and shared the same office space. Jose Hernandez, a former assigned employee, was asked if he knew whether he was employed by Ameritemps PA or Ameritemps West, he replied that he was unsure and that he "only know[s] of one." Toloday similarly testified that both companies "disclosed themselves as Ameritemps."

David Williams further testified that he asked Ameritemps PA and Proctor to assist USCM with the defense costs of the Jimenez lawsuit in April 2018. Proctor seemed familiar with the *Jimenez* complaint and "was not surprised" by it.

4

B.    *Trial Court Proceedings*

Ameritemps PA filed this lawsuit against USCM seeking fees for the transfer of temporary employees to another staffing agency after the relationship between USCM and Ameritemps PA ended in 2018.  USCM then filed a cross-complaint alleging that Ameritemps PA failed to indemnify it for the Jimenez lawsuit, including $300,000 to settle the lawsuit and $265,236.24 in attorneys' fees and costs incurred in defending the lawsuit. The matter was tried without a jury over four days in January 2021.

In its final decision, the trial court ruled that Ameritemps PA "had knowledge of Ms. Jimenez' claims against USCM . . . at least by 10-30-15." The court relied in part on trial exhibit 115, a letter written to Jimenez by Leilani Williams, the branch manager of Ameritemps PA, stating "that after conducting an investigation, there was no confirmation of Ms. Jimenez' accusations of sexual harassment."[1]  The court concluded:  "The evidence established Jesse Proctor [the owner of Ameritemps PA] had notice of Ms. Jimenez' claims as early as October 2015 because Ms. Williams, [Ameritemps PA]'s branch manager, was directly involved in the investigation of Jimenez' claims.  Thereafter, upon service of the complaint in the Jimenez lawsuit, Mr. Toloday [USCM's chief financial officer] gave instructions to notify [Ameritemps PA] and Mr. Proctor.  At the meeting of

_____

[1]    It is unclear from the record whether trial exhibit 115 was formally admitted into evidence.  Although Ameritemps PA's opening brief quotes the trial court's order referring to trial exhibit 115, it raises no issue on appeal regarding the trial court's reliance on it and has therefore forfeited any such objection.  Absent any claim of error, we must presume that the trial court properly relied on the exhibit and that its order accurately stated the substance of the letter.  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness"].)

4-2-18 between Jesse Proctor and David Williams [chief executive officer of USCM], Mr. Proctor was asked to contribute to the costs of the lawsuit. The request to contribute was followed up in writing on 4-2-18. . . . The testimony of witnesses does not show delays on the part of USCM to notify [Ameritemps PA] of Ms. Jimenez' claims. The evidence established that [Ameritemps PA] had the requisite notice regarding claims of Jimenez."

The court also concluded that "Ms. Jimenez was an assigned employee of [Ameritemps PA]" and "that [Ameritemps PA] was the staffing agency in place from 6-23-15 to 6-23-16." The court discussed USCM's evidence that Ameritemps PA was negligent because: (1) Ameritemps PA fired Jimenez instead of transferring her, as USCM had specifically requested; and (2) Ameritemps PA failed to properly screen Jimenez and therefore failed to discover that she was undocumented. The court concluded "that [Ameritemps PA's] negligence was one of the proximate causes of the [Jimenez] lawsuit" but that USCM also bore responsibility because one of its own employees committed the alleged harassment. The court ruled that Ameritemps PA and USCM were equally responsible for USCM's total losses of $565,236.24 incurred as a result of the Jimenez lawsuit, and therefore awarded USCM damages in "the sum of $282,618.12 to indemnify USCM for damages incurred in the Jimenez lawsuit."

Finally, the court concluded that Ameritemps PA and Ameritemps West were acting "with a unity of interest, such that the separate personalities of the corporations did not exist and they should be treated, as a matter of equity, as the same legal entity." Accordingly, the court found Ameritemps PA and Ameritemps West jointly and severally liable for the damages owed to USCM.

Ameritemps PA appeals the trial court's ruling on USCM's cross-complaint for indemnification. Ameritemps West is not a party to the appeal. Moreover, Ameritemps PA does not challenge the trial court's ruling on its complaint for transfer fees.[2]

DISCUSSION

I

Ameritemps PA first contends that USCM violated Section 14 of the staffing agreement because USCM failed to notify it of Jimenez's claim within three business days. According to Ameritemps PA, "[n]otice here was not given to [Ameritemps PA] for two years." Ameritemps PA asserts that "the only evidence the court cited to get past the three-day notice condition precedent in the agreement" was a "foundationless comment" by USCM's owner David Williams that during an April 2, 2018 meeting (two years after Jimenez filed her lawsuit), "Proctor seemed to be familiar with the lawsuit." Ameritemps PA asserts that "[t]his is not substantial evidence."

Contrary to Ameritemps PA's assertion, however, this was *not* the only or even the primary evidence the trial court relied on in deciding the notice issue. Specifically, the court found that Ameritemps PA "had knowledge of Ms. Jimenez' claims against USCM . . . at least by 10-30-15" based on trial exhibit 115, the letter written to Jimenez by Leilani Williams, the branch manager of Ameritemps PA, stating "that after conducting an investigation, there was no confirmation of Ms. Jimenez' accusations of sexual harassment." The court concluded: "The evidence established that Jesse Proctor [the owner of Ameritemps PA] had notice of Ms. Jimenez' claims as early as October 2015 because Ms. Williams, [Ameritemps PA]'s branch manager, was directly

_____

2 The court ruled that Ameritemps PA failed to prove USCM owed it any transfer fees. Because Ameritemps PA does not challenge the court's ruling on its complaint, we do not discuss it any further.

7

involved in the investigation of Jimenez' claims. Thereafter, upon service of the complaint in the Jimenez lawsuit, Mr. Toloday [USCM's chief financial officer] gave instructions to notify [Ameritemps PA] and Mr. Proctor."

Ameritemps PA has failed to discuss any of this evidence or make any argument why it does not constitute substantial evidence to support the trial court's finding that it had notice of Jimenez's claims by at least October 30, 2015, before she even filed her lawsuit. Nor does Ameritemps PA make any *legal* argument why this would be insufficient to satisfy the three-day notice condition. "A party who challenges the sufficiency of the evidence to support a finding must set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable." (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218.) The appellant must also "*show how and why it is insufficient.*" (*In re Marriage of Marshall* (2018) 23 Cal.App.5th 477, 487 [internal quotation marks omitted].) "Because [Ameritemps PA] has failed in [its] obligations concerning the discussion and analysis of a substantial evidence issue, we deem the issue waived." (*Doe*, at p. 218.)[3]

---

[3] It is also questionable whether Ameritemps PA adequately preserved this issue in the trial court. Although Ameritemps PA mentioned the three-day notice provision in its trial brief, it never referred to it during trial and did not argue the three-day notice issue in closing argument. A party may not abandon a theory during trial and then seek to revive it on appeal. (*Carmichael v. Reitz* (1971) 17 Cal.App.3d 958, 969.) We need not decide this question, however, because we conclude that Ameritemps PA forfeited the argument in its briefing on appeal.

## II

Ameritemps PA also argues that the trial court erred in determining that it was the "alter ego" of Ameritemps West, the entity that initially placed Jimenez with USCM before Ameritemps PA took over and entered into the June 2015 staffing agreement. But the trial court found that Ameritemps PA was liable for *its own* negligence as the direct employer of Jimenez during the relevant time period. And Ameritemps West is not a party to this appeal. Ameritemps PA has failed to explain how the alter ego finding could have prejudiced it given the trial court's findings that it was liable for its own negligence as the direct employer of Jimenez and was responsible for negligently screening her and negligently terminating her employment. Because Ameritemps PA has failed to show any prejudice from the alter ego finding, and Ameritemps West has not appealed, we need not decide whether there is sufficient evidence to support the finding. An appellant has the burden to show not only error, but also that the error is prejudicial. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1069.) As to Ameritemps PA, any error regarding the alter ego finding would be harmless given the uncontested findings by the trial court that Ameritemps PA was directly liable for its own negligence.

## III

Finally, Ameritemps PA's opening brief mentions in passing several other issues that are not referenced in a proper argument heading and not developed in any meaningful way. We conclude that these issues are forfeited as well. (See Cal. Rules of Court, rule 8.204(a)(1) ["Each brief must: [¶] . . . [¶] (B) State each point under a separate heading or subheading

9

summarizing the point, and support each point by argument"]; *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294 [appellate court does not need to consider arguments "not clearly set out in a heading and supported by reasoned legal argument"].)

Even if we were to consider these arguments, however, we would reject them on the merits. Ameritemps PA first contends that USCM's contractual indemnity claim must fail because USCM voluntarily settled with Jimenez. But voluntary settlement does not defeat a contractual indemnity claim as a matter of law. Settlement "is presumptive evidence of liability of the indemnitee and of the amount of liability." (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 130.) "[O]ne acting in good faith in making payment under a reasonable belief that it is necessary to his protection is entitled to indemnity or subrogation, even though it develops that he in fact had no interest to protect." (*Bostick v. Flex Equipment Co., Inc.* (2007) 147 Cal.App.4th 80, 132.)

The only case cited by Ameritemps PA on this point explained that "a voluntary payment made by the indemnitee, without regard to its legal liability, is not recoverable thereunder." (*Southern California Gas Co. v. Ventura Pipe Line Constr. Co.* (1957) 150 Cal.App.2d 253, 257 (*So. Cal. Gas*).) In *So. Cal. Gas*, the court concluded that there was no evidence the parties had "contemplated and intended the defendant would be required to indemnify plaintiff against a claim such as the one now asserted." (*Id.* at pp. 259–260.) There, although the indemnification claim also involved a "voluntary payment," the court determined it was a voluntary payment to a third party in a situation not contemplated by the indemnification agreement. (*Ibid.*)

10

Here, by contrast, USCM clearly faced legal liability in a situation covered by Section 11 of the staffing agreement, which obligated Ameritemps PA to indemnify USCM from all claims resulting from Ameritemps PA's negligence in the discharge of its duties. In contrast to Ameritemps PA's argument that USCM did not have "the compulsion of an existing legal liability," the trial court found that USCM settled the case to mitigate further damages and prevent further losses. Ameritemps PA does not challenge this factual finding on appeal.

Similarly, Ameritemps PA's argument that it had "no comparative liability" lacks merit. The trial court found that Ameritemps PA's "negligence was one of the proximate causes of the lawsuit" because Ameritemps PA was negligent in screening Jimenez and firing her despite her allegations of sexual harassment and USCM's request that she be transferred. Once again, Ameritemps PA has not made any meaningful argument challenging the trial court's findings of negligent screening and termination.

Ameritemps PA's attempt to rely on *GEM Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, is misplaced. Unlike *GEM Developers*, this is not a strict liability case and USCM did not rely on comparative equitable indemnification. (*Id.* at p. 423.) On the contrary, indemnification here is based on a contract, which provides for Ameritemps PA's liability to indemnify USCM for claims caused by the negligent discharge of its duties. Accordingly, we reject Ameritemps PA's arguments for reversal of the judgment.

11

## DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


                                                          BUCHANAN, J.

WE CONCUR:



O'ROURKE, Acting P. J.



IRION, J.