**STEINBERG MOORAD & DUNN INC.,
a California Corporation,
Plaintiff—Appellee,**

v.

**David L. DUNN, an individual,
Defendant,**

and

**Athletes First LLC, a Delaware
Corporation, Defendant—
Appellant.**

Steinberg Moorad & Dunn Inc.,
a California Corporation,
Plaintiff—Appellee,

v.

David L. Dunn, an individual,
Defendant—Appellant,

and

Athletes First LLC, a Delaware
Corporation, Defendant.

Steinberg Moorad & Dunn Inc.,
a California Corporation,
Plaintiff—Appellant,

v.

David L. Dunn, an individual; Athletes
First LLC, a Delaware Corporation;
David C. Hunnewell; Centurion Capi-
tal Management, LLC, a Massachu-

setts limited liability company; Plati-
num Equity, LLC, a Delaware limited
liability company; Donald Housman;
Broad Opportunity Yield System,
LLC, a New Jersey limited liability
company, Defendants—Appellees.

Steinberg Moorad & Dunn Inc.,
a California Corporation,
Plaintiff—Appellee,

v.

David L. Dunn, an individual; Athletes
First LLC, a Delaware corporation;
David C. Hunnewell; Centurion Capi-
tal Management, LLC, a Massachu-
setts Limited Liability Company;
Donald Housman; Broad Opportunity
Yield Systems LLC, a New Jersey
Limited Liability Company, Defen-
dants,

and

Platinum Equity, LLC, Defendant—
Appellant.

Nos. 03–55953, 03–56015,
03–56030, 03–56234.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 15, 2005.

Decided March 30, 2005.

Thomas M. Peterson, Esq., Morgan Lewis & Bockius, LLP, San Francisco, CA, Salvatore Picariello, Esq., Morgan, Lewis & Bockius LLP, Irvine, CA, for Plaintiff–Appellee.

Laura M. Sullivan, Esq., Corona del Mar, CA, for Defendant.

Joanne M. Frasca, Esq., Ducote & Frasca, P.C., Santa Ana, CA, Stephen C. Sutton, Esq., Duvin, Cahn & Hutton, Cleveland, OH, for Defendant–Appellant.

Allan Posner, Esq., Rubin & Rudman, Boston, MA, Joseph Wolfson, King of Prussia, PA, Aaron C. Gundzik, Esq., Cotton and Gundzik, LLP, Kent R. Raygor, Esq., Sheppard, Mullin, Richter & Hampton LLP, Los Angeles, CA, for Defendants–Appellees.

Tracy R. Roman, Esq., Donald J. Kula, Esq., Bingham McCutchen, LLP, Los Angeles, CA, for Defendant–Appellant.

Before: KOZINSKI and TROTT, Circuit Judges, and SAND,* Senior District Judge.

MEMORANDUM **

We reverse, vacate the judgment and damages awards, and remand for a new trial all of Steinberg, Moorad & Dunn's (SMD's) claims against Athletes First and David Dunn (except its RICO and trade secret misappropriation claims) for the following reasons, which we explain more fully below: (1) SMD's statutory unfair competition claim was erroneously submitted to the jury in violation of the Pretrial Conference Order; (2) erroneous evidentiary rulings relating to the formation of Dunn's employment contract with SMD prejudiced the verdict; (3) the district court erred in not instructing the jury that the non-competition clause in Dunn's employment agreement was invalid; and (4) the district court erred in failing to instruct the jury that Dunn's assignment agreement with SMD was invalid.

We affirm: (1) the Fed. R. Civ. Proc. 12(b)(6) dismissal of RICO claims against Platinum Equity, Dunn, and Athletes First; (2) the grant of summary judgment in favor of Platinum Equity, Dunn, and Athletes First for trade secret misappropriation; (3) the district court's disposition of all other claims against Platinum Equity.

## I. Unfair Competition

■ The district court erred when it submitted both statutory and common law unfair competition theories to the jury. Statutory unfair competition is an equitable claim under California law, one that does not provide for damages or a jury trial. *See* Cal. Bus. & Prof.Code § 17200; *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1265–66, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992) (in bank). The parties and the court were bound by the Pretrial Conference Order, which outlined the conduct that could comprise common law versus statutory unfair competition. Instructing the jury that it could find the defendants liable for common law unfair competition on the basis of conduct intended by the Pre-trial Conference order to comprise only the statutory claim was error.

Recognizing its mistake, the district court attempted to salvage the verdict:

> The error is created because there is no clear distinction for the jury to separate the statutory measure for unfair competition versus the common law.... Of course, if I had to retry or redo the jury instruction[s] again, they would not be presented in the fashion that they were presented to the jury.

> However, does that automatically cause this Court to grant a new trial at this time?

> After weighing this issue for a good number of days, and after specifically weighing the facts that were presented [to] the jury with regard to the issues, I have come to the conclusion that the error in law can be concluded by this Court to be, more probably than not, harmless.

> . . . .

> Had the jury come back with any other result other than a result that had been presented to the Court, the Court, in its further equitable decision to be made, would have taken any lower

* Hon. Leonard B. Sand, Senior United States District Judge for the Southern District of New York, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

amount by the jury into consideration and would very likely have come up with the same final decision that had been meted out by the jury in its ultimate form.

However, the district court could no more award damages for statutory unfair competition than could the jury. *Id.* at 1266, 10 Cal.Rptr.2d 538, 833 P.2d 545. The court had authority only to award restitution, and on that subject, no competent evidence was ever presented. *Id.* Moreover, what the court "would very likely have come up with" is not only speculative and vague, but also an inappropriate and unconvincing standard to use in determining whether this fundamental error was harmless. Consequently, we reverse the judgment on this claim.

Because we reverse, vacate, and remand on this claim, the entire judgment against Athletes First and Dunn must also be reversed, including the awards of punitive damages and attorneys' fees against both Athletes First and Dunn. *Knapp v. Ernst & Whinney*, 90 F.3d 1431, 1439 (9th Cir. 1996). Further, because we conclude that the statutory claim was erroneously submitted to the jury, we need not decide whether the jury should have been instructed on the litigation privilege, Cal. Civ.Code § 47.

We explain other grounds for our decision and address several other contentions made by the parties to aid the district court in the retrial.

## II. SMD's Breach of Contract Claim Against Dunn

■ Three categories of errors mandate our reversal of SMD's breach of contract claim against Dunn. First, although the district court allowed SMD to present evidence as to Dunn's statements during contract negotiations, the court sustained multiple hearsay objections when Dunn at-tempted to testify as to what Assante representatives told him during those same negotiations. Because these statements were party admissions, they were admissible pursuant to Fed.R.Evid. 801(d)(2), and their exclusion under these circumstances was an abuse of discretion.

We conclude that this error was prejudicial. That Dunn was allowed to testify as to how *he* perceived the deal does not save the verdict because this was only one part of the whole. Had the jury heard Dunn testify as to what Assante told him, they may well have concluded that Dunn did not breach his contract with SMD.

■ Second, the court erred in failing to instruct the jury that the non-competition clause in Dunn's employment contract was invalid under California law. Cal. Bus. & Prof.Code section 16600 establishes that non-competition clauses in an employment agreement are unenforceable to the extent that they limit the employee's ability to compete after leaving, whether or not the employee is at-will and whether or not his term of employment has ended. When an employee leaves, be it before the term of employment has ended or not, section 16600 prohibits the employer from preventing that employee from pursuing his trade.

To support its argument that the instruction was not warranted, SMD claims that Dunn's non-competition clause was valid under Cal. Civ.Code section 3423. This section allows a court to enjoin competition by unique and irreplaceable employees during the fixed term of the contract, even if they no longer work for the employer. *See, e.g., MCA Records, Inc. v. Newton–John*, 90 Cal.App.3d 18, 23–24, 153 Cal.Rptr. 153 (1979).

SMD contends that because the jury was instructed to award damages only if SMD proved that Dunn was unique and

irreplaceable, by awarding damages, the jury necessarily found that Dunn was unique and irreplaceable. Thus, they argue, the non-competition clause was valid and there was no error in failing to give the instruction. This argument misses the mark. Not only was the jury not presented with evidence that Dunn was unique and irreplaceable, but also such evidence would only allow the court to award injunctive relief. Cal. Civ.Code § 3423(e). Such a finding would not provide a basis for a jury to award damages.

Third, for the same reason that the jury should have been instructed that the non-competition clauses were invalid, the court erred in not instructing the jury that the assignment agreement was invalid to the extent that it purported to require Dunn to assign to SMD, into perpetuity, all proceeds earned from representing former SMD clients.

Finally, the district court correctly concluded that summary judgment in Dunn's favor on the breach of contract claim was not appropriate because there are material issues of fact as to whether Dunn breached his contract.

## III. RICO

We affirm the district court's dismissal of all of SMD's RICO claims because SMD failed to plead a "pattern of racketeering activity." 18 U.S.C. § 1962(c). SMD contends that the alleged extortion in this case provides the basis for finding open-ended continuity. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 241–42, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The district court correctly determined that this claim failed.

SMD asserts that the threat of extortion, by its nature, projects into the future with a necessary threat of repetition. Although the threat of extortion is (and was when the complaint was filed) still an im-

plied possibility, it is not of the character that the Supreme Court contemplated when it announced the rule of open-ended continuity. Indeed, the assertion that this extortion claim necessarily poses the threat of repetition is contradicted by the Supreme Court's hypothetical example in *H.J. Inc.* The Supreme Court stated that the "continuing threat" inquiry would depend on the facts of each case. *Id.* at 241–42, 109 S.Ct. 2893. As guidance, the Court provided several examples, one of which was the following:

> Suppose a hoodlum were to sell "insurance" to a neighborhood's storekeepers to cover them against breakage of their windows, *telling his victims he would be reappearing each month* to collect the "premium" that would continue their "coverage." Though the number of related predicates involved may be small and they may occur close together in time, *the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future,* and thus supply the requisite threat of continuity.

*Id.* (emphasis added).

This example is akin to the threat in the instant case, but it bears two critical distinctions. First, any *continued* threat of extortion in this instance was not specific. Rather, it might be inferred only from the fact that similar threats occurred and were carried out in the past. Second, the alleged threat involved here simply could not extend indefinitely into the future. Any possible threat necessarily ends when the litigation ends—it does not extend indefinitely into the future. Thus, SMD failed to allege a "pattern" of racketeering activity.

Were we to conclude otherwise, a small number of threats (perhaps even a single threat), with no indication of repetition

aside from the sole fact of their having been made once, could, contrary to *H.J. Inc.*, support a claim under RICO. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535–36 (9th Cir.1992) (concluding that plaintiff failed to allege threatened continuity where the evidence suggested that a single episode was comprised of multiple predicate acts, but did not suggest that harm was meant to anyone but the plaintiff).

Moreover, it appears that, as a matter of law, the extortionate communications SMD contends form the basis of this claim—actual threats made by Athletes First after SMD proposed litigation—are privileged communications under Cal. Civ.Code section 47. *See Kashian v. Harriman*, 98 Cal.App.4th 892, 913, 120 Cal.Rptr.2d 576 (2002) (application of the privilege is a question of law); *Edwards v. Centex Real Estate Corp.*, 53 Cal.App.4th 15, 34–35, 61 Cal.Rptr.2d 518 (1997) (announcing a three-prong test for application of the privilege to communications made pre-litigation: (1) litigation "must actually be suggested or proposed orally or in writing"; (2) "the proposal of litigation must be made *in good faith*"; and (3) "the contemplated litigation must be *imminent*").

Indeed, we see no reason why the evidence relating to threats made, by either party, was admitted at all. It appears to have no relevance other than to erroneously support the underlying tort claims. Consequently, without the evidence of the extortionate communications, no conduct could support the RICO claim. *Guerrero v. Gates*, 357 F.3d 911, 916 (9th Cir.2004) (holding that though courts ordinarily look only to the face of the complaint in determining whether a claim is properly dismissed under Fed. R. Civ. Proc. 12(b)(6), we may affirm the dismissal on any basis supported by the record).

## IV. Trade Secret Misappropriation

We affirm the district court's grant of summary judgment on all of SMD's trade secret misappropriation claims. To prove the existence of a trade secret, SMD must present evidence that they had "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (1)[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2)[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ.Code § 3426.1(d).

■ First, the district court correctly concluded that the client list information was available to all agents. Thus, this information was not a protectable trade secret in this case. *See, e.g., Morlife Inc. v. Perry*, 56 Cal.App.4th 1514, 66 Cal. Rptr.2d 731 (1997) (reviewing for substantial evidence and concluding that where the trial court reasonably found that customer *identities* were not generally known to the industry, the information was a trade secret under California law).

■ Moreover, SMD's claim that "player[ ] desires and preferences" is a trade secret is not supported by this record. It may be that California's "trade route" cases could be analogous here, but the evidence to which SMD points does not support the claim. The only evidence to which SMD points are two player depositions. The first suggests that Dunn, while at SMD and after resigning, talked with one athlete about securing marketing and endorsement deals. An inference could be made from this evidence, though the evidence is extremely vague, that this was a career goal of that athlete, known to Dunn as a result of his employment at SMD. There is, however, no suggestion that this

information was confidential to the athlete or not generally known.

■ Similarly, a second athlete's deposition shows that, as a result of Dunn's employment at SMD, Dunn knew of the athlete's hopes to become involved in entertainment. After Dunn's departure from SMD, Dunn directly used that information in an unsuccessful effort to secure that athlete as an Athletes First client. But again, there is no suggestion in the record that *this* particular information was confidential. SMD cites to *other* information about the athlete's objectives that *was* confidential—his unhappiness with his current team and his hopes to sign with a different one. However, the record does not support the contention that the athlete's hopes for entertainment opportunities, the alleged trade secret information here, was not generally known.

Finally, SMD's claim that its "internal data about costs, budgets, profit margins and projections" qualifies for trade secret protection fails. SMD correctly points out that costs and pricing information can be shown to derive independent economic value and thus can be trade secrets. *Whyte v. Schlage Lock Co.*, 101 Cal.App.4th 1443, 1455–56, 125 Cal.Rptr.2d 277 (2002). But this is only the case if the methods for setting such prices are not commonly-used industry formulas. *Id.* This is because pricing policies could be valuable to competitors seeking to set lower prices. *Id.* at 1455. *Whyte* does not apply to this case. No pricing information that could be used to compete was taken.

## V. All Remaining Claims Against Platinum Equity

There was no issue of material fact supporting any theory of liability against Platinum Equity. The district court was presented with no evidence from which it could reasonably infer that Platinum Equi-

ty had actual knowledge of any wrongdoing by Athletes First or Dunn. SMD's arguments that Platinum Equity *should have known* about wrongdoing by Athlete's First or Dunn are relevant only to the trade secret misappropriation claim, which we have already rejected. *PMC, Inc. v. Kadisha*, 78 Cal.App.4th 1368, 1372, 93 Cal.Rptr.2d 663 (2000).

As to "investor liability," *Kadisha* requires, among other things, that SMD show some evidence supporting an inference that Platinum Equity controlled Athletes First. *Id.* The record belies such an inference.

## VI. Other Contentions

■ We address several other contentions which do not affect our decision, also to aid the district court in retrial. The district court correctly decided that the interference with contract and prospective economic advantage claims were not preempted because the NFLPA regulations preempt only disputes between contract advisors. SMD is not a contract advisor under the regulations, and thus, the regulations do not apply.

We conclude also that the district court did not abuse its discretion when it admitted Dr. Rausser's testimony regarding damages. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149–50, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

■ It is not at all clear on what basis much of the evidence involving allegations of perjury and threats to expose negative information was admissible. It would seem that the litigation privilege, where applicable, must result in the *exclusion* of such information from evidence, not its admission with meaningless instructions about the existence of the privilege, such as were offered (but not given) by defendants, i.e., proposed instruction numbers

65, 66, and 67. We would anticipate on remand that the court *and* the parties would take a closer look at the admissibility of this evidence, using the privilege itself as a yardstick, not Federal Rule of Evidence 408.

Finally, we agree with the district court's conclusion that the Meal Memo was not protected by the attorney-client privilege. *Gomez v. Vernon,* 255 F.3d 1118, 1131–32 (9th Cir.2001).

Each party shall bear their own cost on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**