**David SMITH, Plaintiff,**

v.

**CHASE MORTGAGE CREDIT GROUP, La Jolla Lending & Real Estate, Inc., Paul Bakhtiar, Pooyan Bakhtiar, Wells Fargo, N.A., West American Escrow, Inc., and Does 1 through 10, inclusive, Defendants.**

**and Related Counterclaims.**

**No. CIV. S–08–1049 LKK/KJM.**

United States District Court,
E.D. California.

Sept. 2, 2009.

Karen M. Goodman, Summer Dawn Haro, Goodman & Associates, Sacramento, CA, for Plaintiff.

Joshua Eric Whitehair, Michael J. Steiner, Severson and Werson, San Francisco, CA, Maureen Anne Rodgers, Glynn & Finley, LLP, Walnut Creek, CA, Dale F. Hardeman, Irvine, CA, for Defendants.

### ORDER

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiff David Smith brings suit alleging that defendants committed various unlawful acts surrounding the refinance of his home loan. Plaintiff specifically alleges that Wells Fargo Bank ("Wells Fargo") violated the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act of 1974 ("RESPA") and California Business and Professions Code § 17200. Pending before the court is plaintiff's motion for summary judgment against Wells Fargo. Plaintiff also moves for declaratory and injunctive relief. As explained herein, the court grants the motion in part and denies it in part.

### I. Background and Facts

#### A. Facts [1]

■ Plaintiff brought this case alleging defendants' unlawful acts surrounding the negotiation and consummation of a refinance of plaintiff's home loan. In July 2002, plaintiff purchased residential property for which he obtained a home loan from Countrywide Home Loans ("Countrywide").[2] In October 2007, plaintiff was contacted by defendant Paul Bakhtiar[3] to refinance his home loan.

#### 1. The Parties

In October 2007, Bakhtiar was employed by defendant Chase Mortgage Credit Group ("Chase"). The parties dispute whether Bakhtiar was a loan broker or a loan processor. See SSUF ¶ 3; Decl. of Summer Haro In Support of Pls.' Mot. for Summ. J. ("Haro Decl.") Ex. 10–11; Decl. of John Whitehair in Support of Defs.' Opp. to Pls.' Mot. for Summ. J. ("Whitehair Decl.") Ex. C (Bakhtiar Depo. at 10:12–21). Sometime in 2008, Chase's became La Jolla Lending & Real Estate, Inc. ("La Jolla"). It is unclear whether Chase and La Jolla became the same entity or

---

1. All facts are undisputed unless otherwise noted. Each party has objected to several items of the other's evidence and moved to strike some of the evidence. Many of the objections refer to evidence not relied on in resolution of the motion. To the extent the evidence is relied on, the objections are OVERRULED.

 Defendants also move the court to take judicial notice of public records of deeds of trust for property at issue in this case. A court may take judicial notice of a fact not subject to reasonable dispute, either because the fact is generally known within the territorial jurisdiction of the trial court or because the fact is capable of accurate and ready determination from sources whose accuracy cannot reasonably questioned. Fed.R.Evid. 201(b). A court shall take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed.R.Evid. 210(d). Here, the defendants have met that standard by providing the court with copies of the documents, which are public records. Accordingly, the court grants the request for judicial notice.

2. Countrywide is not a party in this suit.

3. Paul Bakhtiar is also referred to in the complaint and motion as Pooyan Bakhtiar. There is evidence that Bakhtiar used the name "Paul Baxter" when speaking with clients. See Decl. of David Smith In Support of Motion for Summary Judgment ("Smith Decl.") ¶ 3.

operated as separate corporations throughout plaintiff's loan negotiation, as the evidence indicates that during this time La Jolla used its and Chase's names interchangeably. *See* Whitehair Decl. Ex. B (Dadar Dep. 11:9–22, 12:13–13:15); Ex. A (Smith Dep. 32:13–34:2); *see also* Haro Decl. Ex. 10–11 (Bakhtiar's Resp. To Pl's Req. for Admis., No. 2); Whitehair Decl. Ex. C (Bakhtiar Depo. at 10:3–10).

At the time, Wells Fargo had a broker origination agreement with La Jolla whereby La Jolla would submit loan applications to Wells Fargo and Wells Fargo would issue the loan. Defendants Bakhtiar served as the "Broker Contact" for La Jolla on various loan documents received by plaintiff during his refinancing. The parties agree that La Jolla brokered the loan by Wells Fargo used for plaintiff's home refinancing. After the loan was consummated on December 10, 2007, Wells Fargo held a security interest in the loan and collected plaintiff's monthly payments.

### 2. The Loan Transaction

Plaintiff has tendered evidence that he was first contacted by Bakhtiar in October 2007, at which time Bakhtiar represented that he was a licensed agent working with Chase who would broker a loan for plaintiff. Smith Decl. ¶ 3. Bakhtiar denies that he represented himself as a licensed agent when he first spoke with plaintiff. *See* Haro Decl. Ex. 10–11 (Bakhtiar's Resp. to Pl.'s Req. for Admis. No. 5). When Bakhtiar contacted plaintiff, he was not licensed with either the California Department of Real Estate or the California Department of Financial Services.

Plaintiff has tendered evidence that Bakhtiar was the only person plaintiff corresponded with from Chase and La Jolla before escrow closed on the Wells Fargo loan on December 10. Smith Decl. ¶ 3. However, defendant has tendered evidence that plaintiff also spoke with Mr. Dadar and Mr. Moorhaj, though it is unclear whether they spoke with plaintiff before or after escrow closed on the loan. *See* Whitehair Decl. Ex. A (Smith Dep. at 33:1–34:20), Ex. B (Dadar Dep. 19:5–20:13).

According to plaintiff, in November 2007 Bakhtiar told him that he would offer plaintiff a loan that would have no loan fees and have taxes impounded in the monthly payments to make the new loan payments equal to plaintiff's existing Countrywide loan payments.[4] Smith Decl. ¶ 3. Plaintiff would also receive $50,000 in cash back from the refinancing. *Id.* Defendant denies plaintiff's contention and has tendered evidence that Bakhtiar told plaintiff that the loan would include "reasonable fees for brokering the loan" which would be included in the United States Department of Housing and Urban Development ("HUD") closing statement. Haro Decl. Ex. 10–11 (Bakhtiar's Resp. to Interrogs. Set One No. 10).

On December 1, 2007, a man representing himself as a notary arrived at plaintiff's home with the documents for the Wells Fargo loan on behalf of La Jolla. Wells Fargo has tendered evidence that the notary was Mr. Moorhaj from La Jolla. Whitehair Decl. Ex. C (Bakhtiar Dep. 47:7–25). The loan documents provided to plaintiff included a deed of trust and prom-

---

**4.** In support of his contention, plaintiff has tendered evidence that his monthly payment under his original loan was $1,860.24. Haro Decl. Ex. 1. It is unclear from a review of this document, however, whether taxes and insurance were impounded in this payment. *See id.* Defendant relies on a document titled "Uniform Residential Loan Application" to detail that the Wells Fargo loan refinance resulted in lower monthly payments by plaintiff than the Countrywide loan. *See* Smith Dep. 68:21–70:25 & Dep. Exs. 15 & 16. Plaintiff has testified that these terms were incorrect, although his testimony did not specify what he believed was incorrect. *See id.* at 70:4–25.

issory note for the property by which Wells Fargo secured the loan and acquired a security interest in the property. These documents state that the loan totaled $264,500.00 with monthly payments of $1,607.13 and an interest rate of 6.125 percent. Plaintiff calculated that the loan would result in $19,500.00 in cash back after he paid off the Countrywide loan. However, none of the documents provided by plaintiff appear to detail this cash back calculation. Wells Fargo has tendered evidence that on November 30, 2007, plaintiff signed a document "Borrower's Estimated Closing Costs" which reflected $1,523.14 in cash back. Whitehair Decl. Ex. A (Smith Dep. 76:2–10 & Dep. Ex. 20). Plaintiff testified that he did not recall signing the document. *Id.*

Plaintiff contends that none of the documents he reviewed on December 1, 2007 included a good faith estimate ("GFE"), itemization of the amount financed, or statement that plaintiff had the right to receive a written itemization for the loan. Smith Decl. ¶ 4. Wells Fargo relies on the "Borrower's Estimated Closing Costs" and the "Loan Closing Instructions", which provide an itemization of the loan, to demonstrate that plaintiff did receive an itemization before consummation of the loan. *See* Whitehair Decl. Ex. A (Smith Dep. Exs. 20, 26). Plaintiff testified that he did not see the "Borrower's Estimated Closing Costs" and he was never provided with the pages showing the itemization in the "Loan Closing Instructions." *Id.* (Smith Dep. 76:2–10, 80:1–81:5).

Escrow on the Wells Fargo loan closed on December 10, 2007. Plaintiff contends that he did not receive any GFE or itemization of the loan before escrow closed. Smith Decl. ¶ 5. Wells Fargo has tendered evidence that several versions of a GFE were faxed to plaintiff before December 10, 2007. *See* Haro Decl. Ex. 24. Plaintiff contends that he never saw these. *See* Pl.'s Reply to SSUF ¶ 17; Whitehair Decl. Ex. A (Smith Dep. 76:2–10, 80:1–81:5).

According to Wells Fargo's person most knowledgeable on loan procedures, Wells Fargo requires that the broker provide a GFE to Wells Fargo as part of a complete loan package. Reply Decl. of Summer Haro In Support of Pl.'s Mot. for Summ. J. ("Haro Reply Decl.") Ex. 33 (Benbow Dep. 21:1–4). Wells Fargo does not have a way of verifying that a GFE is provided to the borrower by the broker, however. *Id.* (Benbow Dep. 21:5–8).[5] To demonstrate that a GFE was delivered to plaintiff, defendant relies on Bakhtiar's response to plaintiff's interrogatory, which prompted Bakhtiar to describe "all facts describing the delivery method(s) you for providing [sic] Plaintiff with documents for the subject loan." Bakhtiar responded, "As far as I recall, Mr. Smith, like all borrowers, was provided a 'Good Faith Estimate' at the time of the initial loan estimates, as and (sic) Form Z Federal Loan Disclosure and HUD Closing Statement before close of escrow, all of which he signed for and received." Whitehair Decl. Ex. E (Bakhtiar's Resp. to Pl.'s Interrogs., No. 9).

Plaintiff also contends that he never received a HUD–1 Preliminary Settlement Statement from Wells Fargo. Under Wells Fargo's policy, the closing agent is responsible for preparing the HUD–1 Settlement Statement. Haro Reply Decl. Ex. 33 (Benbow Dep. 30:3–19). Wells Fargo does not have a mechanism for verifying that the closing agent includes the estimated HUD–1 or the Truth in Lending disclosures in the closing package to the borrower. *Id.* (Benbow Dep. 40:15–23). Plaintiff

---

**5.** Defendant has objected to plaintiff's reliance on these portions of the deposition as not reflecting Ms. Benbow's complete testimony, but has not tendered the omitted portions of the deposition transcript for the court's review.

received the final HUD–1 Settlement Statement after escrow had closed on the Wells Fargo loan on December 10, 2007. The final HUD included $15,364.62 in fees for settlement charges.

### 3. Events Subsequent to the Close of Escrow

After escrow closed on the loan, plaintiff contacted Bakhtiar to discuss the loan fees. Bakhtiar testified that the loan fees attached to the HUD–1 were inadvertent mistakes and that they offered to refund plaintiff for certain fees. Haro Reply Decl. Ex. 32 (Bakhtiar Dep. 64:11–67:12). Plaintiff later received a refund check for the Wells Fargo loan for $2,564.23. On February 1, 2008, plaintiff demanded rescission of the loan based on the grounds that Wells Fargo had not provided plaintiff with a GFE or itemization of the loan. Plaintiff then filed the instant suit in Sacramento County Superior Court.

### B. Procedural History

Plaintiff commenced this action in Sacramento County Superior Court on April 14, 2008, which was subsequently removed to this court. In his complaint, plaintiff asserts six claims against various defendants: breach of fiduciary duty, negligence, fraud, unfair business practices, violation of TILA, and injunctive relief. Only two of these, for violation of TILA and unfair business practices under California Government Code § 17200, are asserted against defendant Wells Fargo. Based on these claims, plaintiff seeks injunctive and declaratory relief against Wells Fargo, in addition to damages and costs.

### II. Standard for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56

Summary judgment is appropriate when there exists no genuine issue as to any material fact. Such circumstances entitle the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 853 (9th Cir.1995). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); *Sicor Ltd.*, 51 F.3d at 853. In doing so, the opposing party may not rely upon the denials of its pleadings, but must tender evidence of specific facts in the form of affidavits and/or other admissible materials in support of its contention that the dispute exists. Fed.R.Civ.P. 56(e); *see also First Nat'l Bank*, 391 U.S. at 289, 88 S.Ct. 1575. In evaluating the evidence, the court draws all reasonable inferences from the facts before it in favor of the opposing party. *Matsushita*, 475 U.S. at 587–88, 106 S.Ct. 1348 (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (*per curiam*)); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001). Nevertheless, it is the opposing party's obligation to produce a factual

predicate as a basis for such inferences. *See Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348 (citations omitted).

## III. Analysis

Plaintiff alleges two causes of action against Wells Fargo: violation of TILA, 15 U.S.C. § 1601 *et seq.,* and unlawful and unfair business practices in violation of California Business and Professions Code § 17200. Plaintiff moves for summary judgment on both claims against Wells Fargo. The court grants the motion in part and denies it in part.

## A. Violation of The Truth in Lending Act

 Plaintiff alleges Wells Fargo violated TILA by failing to provide him with an itemization of the loan transaction and failing to provide a GFE of the loan costs.[6] Congress designed TILA to protect all consumers, who are inherently at a disadvantage in loan and credit transactions. *Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 705 (9th Cir.1986). TILA was enacted "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inac-

curate and unfair credit billing." 15 U.S.C. § 1601(a). "The Act requires creditors provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." *Beach v. Ocwen Fed. Bank,* 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998).

### 1. Failure to Provide Plaintiff with Written Itemization

Plaintiff first seeks summary judgment on the basis that Wells Fargo violated TILA by failing to timely provide him with a written itemization of the amount financed for the loan. TILA mandates the creditor to provide several initial disclosures for any consumer credit transaction, except those that are "open ended credit plan[s]."[7] For subject transactions, the creditor must disclose the amount financed, the finance charge, plaintiff's rescission rights, and certain other information before the credit is extended. 15 U.S.C. §§ 1638(a)(2)-(4), (b)(2). In addition to the disclosure of the amount financed, a creditor must also provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed. *Id.* § 1638(a)(2)(B). Itemization of the amount financed must include: (1) the amount that will be paid directly to the consumer, (2) the amount that will be credited to the consumer's account to discharge the obligations owed to the creditor, (3) each amount that is or will be paid to third

---

**6.** In plaintiff's motion for summary judgment, plaintiff also asserts that defendants violated TILA by failing to advise him of his right to request an itemization of the loan transaction pursuant to 15 U.S.C. § 1638(a)(2)(B). This was not pled in the complaint, however, and therefore it is not proper for plaintiff to assert this allegation as a basis for summary judgment.

**7.** An "open-end credit plan" is defined under TILA as a plan under which the creditor reasonably contemplates repeated transactions, which prescribes the terms of such transactions, and which provides for a finance charge which may be computed from time to time on the outstanding unpaid balance. 15 U.S.C. § 1602(i).

persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person, and (4) the total amount of any charges which are part of the finance charge but which will be paid by the consumer before or at the time of the consummation of the transaction, or have been withheld from the proceeds of the credit. *Id.*

■ Wells Fargo has tendered evidence of an itemization of the estimated closing costs entitled "Borrower's Estimated Closing Costs", which is dated November 30, 2007, prior to consummation of the loan on December 1, 2007. Whitehair Decl. Ex. 20. This document appears to include plaintiff's signature. *See id.* The document details the total amount of the loan, the payoff charges for the Countrywide loan, other charges paid to third parties and identification of those parties, and plaintiff's refund. *Id.* Plaintiff, however, testified that he did not see the document before becoming obligated to the Wells Fargo loan and does not recall having signed it. Whitehair Decl. Ex. A (Smith Dep. 76:2–10).

Wells Fargo has also tendered evidence of a document entitled "Loan Closing Instructions" which includes an itemization of the charges associated with the loan. It is unclear, however, whether this itemization reflects the names of the third parties receiving funds, as required under 15 U.S.C. § 1638(a)(2)(B). *See* Whitehair Decl. Ex. A (Smith Dep. Ex. 26). According to plaintiff, he only saw pages 287 to 294 of the "Loan Closing Instructions", which did not include the cited itemization on pages 285 to 286. *Id.* (Smith Dep. 80:1–81:5).

Therefore, there is a dispute of fact as to whether plaintiff received the disclosures, with the resolution resting on determinations of credibility of the witnesses. Defendant has met its burden to tender evidence that would permit a jury to find in its favor, as there is evidence from which a reasonably jury could conclude that defendant provided plaintiff with an itemization that met the TILA disclosure requirements. This suffices to defeat plaintiff's motion for summary judgment on this aspect of plaintiff's claim. *See Matsushita Elec. Indus. Co.,* 475 U.S. at 585–86, 106 S.Ct. 1348.

**2. Failure to Provide Plaintiff with a Good Faith Estimate of The Loan**

■ TILA offers an alternative method for a creditor to meet the statute's requirement that it provide the itemization of the amount financed. When a lender is required to provide a creditor with a GFE under the Real Estate Settlement Procedures Act (RESPA), this GFE satisfies TILA's itemization requirement. 15 U.S.C. § 1638(b); *see also* 12 C.F.R. § 226.18(c). This disclosure requirement only applies to "residential mortgage transactions," 15 U.S.C. § 1638(b), defined under TILA as a mortgage, deed of trust or other consensual security interest that is created or retained against the residential property to finance "the acquisition or initial construction" of the property. 15 U.S.C. § 1602(w).

The plain language of the statute indicates that Congress intended a GFE in lieu of an itemization only for loans that secure the initial acquisition of the property, not a refinance loan. *See id.* Other sections of the statute support this distinction between a residential mortgage transaction and a loan refinance. *See* 15 U.S.C. § 1635(e)(1)-(2); 12 C.F.R. § 226.23(f)(1)-(2). Furthermore, the distinction between a residential mortgage and a loan refinance under TILA has been noted by other courts. *See Watts v. Decision One Mortg. Co., LLC,* No. 09 CV 0043 JM (BLM), 2009 WL 1657424, *3 (S.D.Cal. June 11, 2009) (refinancing may be amenable to rescission under TILA though pur-

chase money mortgage is not), *Cataulin v. Washington Mut. Bank, SFB*, No. 08 CV 2419 JM (NLS), 2009 WL 648921, *4 (S.D.Cal. Mar. 9, 2009) (refinancing transaction amenable to rescission though purchase money mortgage for rental property is not). Therefore, because plaintiff's refinance was not an initial acquisition of residential property, the loan does not qualify for the GFE alternative to itemization under 12 C.F.R. § 226.18(c). Accordingly, plaintiff's motion must be denied to the extent plaintiff alleges that defendant violated TILA by failing to provide a GFE.

### B. Violation of California Business and Professions Code § 17200

California Business and Professions Code § 17200 provides, in relevant part, "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. Prof.Code § 17200. "Because ... section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Lippitt v. Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (quoting *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Company*, 20 Cal.4th 163, 180, 83 Cal. Rptr.2d 548, 973 P.2d 527 (1999)). "[A] practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' or vice versa." *Id.* Virtually any federal, state, or local law can serve as a predicate for an action under section 17200. *Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal. App.4th 700, 717, 113 Cal.Rptr.2d 399 (2001) (citing *State Farm Fire & Casualty Co. v. Superior Court (Allegro)*, 45 Cal. App.4th 1093, 1102, 53 Cal.Rptr.2d 229). Injunctive relief and/or restitution are the authorized remedies. Cal. Bus. & Prof. Code § 17203.

Plaintiff first asserts that defendant's violation of TILA constitutes a violation of the UCL. As discussed above, there is an issue of fact as to whether defendant violated TILA, and thus whether defendant's conduct was an "unlawful business activity."

Plaintiff also alleges that defendant violated the UCL by violating RESPA and by violating Wells Fargo's own business practices as defined in Wells Fargo's "Broker Origination Guide." The court discusses each of these allegations in turn.

#### 1. Violation of RESPA

In the complaint, plaintiff alleges defendant's failure to adequately disclose the terms of the loan and to satisfy acceptable practices in underwriting the loan constitute an unlawful and unfair business practice under California law. Compl. ¶ 14. Plaintiff expands upon this violation in the instant motion by alleging that defendant violated RESPA by failing to provide plaintiff with a GFE or to ensure that the dealer provide plaintiff with the GFE pursuant to 24 C.F.R. § 3500.7(a)(1), (b)(1).

RESPA was passed to ensure that home buyers and sellers receive notice of settlement costs well in advance of the consummation of the loan transactions. 12 U.S.C. § 2601. RESPA applies to all "federally related mortgage loan[s]," which include a loan secured by a first or subordinate lien on residential real property designed principally for occupancy, including any secured loan where the proceeds are used to prepay or pay off an existing loan secured by the same property. 12 U.S.C. § 2602(1)(A). Under Regulation X, RESPA's enforcement mechanism, no later than three business days after a lender [8]

---

8. A lender is defined as "the secured creditor or creditors named in the debt obligation and document creating the lien." 24 C.F.R. § 3500.2.

receives an application, or information sufficient to complete an application, the lender must provide the applicant with a GFE. 24 C.F.R. § 3500.7(a)(1). Additionally, where the loan is brokered, the lender must either provide the GFE to the loan applicant or ensure that the broker provide the GFE to the applicant. 24 C.F.R. § 3500.7(b)(1). Where the lender chooses the latter option, the lender is responsible for ascertaining that the GFE has been provided. *Id.*

The GFE must contain an estimate of settlement charges the borrower is likely to incur, the loan amount, the loan term, the interest rate, as well as other information described in detail in the regulations. 24 C.F.R. § 3500.2; 24 C.F.R.App. C to § 3500.

■ Plaintiff contends that Wells Fargo or its broker La Jolla did not provide plaintiff with a GFE before consummation of the loan. According to plaintiff, as discussed above, he does not recall signing the "Borrower's Estimated Closing Costs" form assertedly provided to him. Whitehair Decl. Ex. A (Smith Dep. 76:2–10). Defendant disputes this, contending that the form bears plaintiff's signature. *See id.* (Smith Dep. Ex. 20). It is unclear, however, whether defendant argues that this itemization is sufficient to substitute as a GFE. If that is defendant's position, the "Borrower's Estimated Closing Costs" does not appear to contain all of the information required by the regulations, such as the interest rate, whether the interest rate may rise, and its maximum amount. *See* 24 C.F.R.App. C to § 3500.

■ Second, Wells Fargo alleges that a GFE was delivered to plaintiff based on Bakhtiar's response to plaintiff's interrogatory. Bakhtiar stated that as far as he could recall, plaintiff, like all borrowers, was provided a GFE. Whitehair Decl. Ex. E (Bakhtiar's Resp. to Pl.'s Interrogs., No. 9). However, the lender itself must have a mechanism for ensuring the borrower received the GFE before consummation of the loan under RESPA. 24 C.F.R. § 3500.7(b)(1). Here, it is undisputed that Wells Fargo does not have a practice of delivering a GFE to a borrower for a residential loan. Haro Reply Decl. Ex. 33 (Benbow Dep. 19:1–5). Further, it is undisputed that they do not have any way of verifying that the GFE is provided to the borrower by the broker. *Id.* (Benbow Dep. 20:24–21:8).

■ Wells Fargo next argues that plaintiff cannot pursue a claim under RESPA because it does not provide for a private right of action. This argument also fails. The California courts have held that it is not relevant whether the underlying statute serving as a basis for a UCL claim also provides for a right of action; section 17200 can form the basis for a private cause of action even if the underlying statute does not. *See, e.g., Stop Youth Addiction, Inc. v. Lucky Stores,* 17 Cal.4th 553, 562, 71 Cal.Rptr.2d 731, 950 P.2d 1086 (1998) (abrogated on other grounds by Cal. Bus. & Prof.Code § 17204 (2004)); *Manufacturers Life Insurance Co. v. Superior Court,* 10 Cal.4th 257, 41 Cal.Rptr.2d 220, 895 P.2d 56 (1995); *see also Chabner v. United of Omaha Life Ins. Co.,* 225 F.3d 1042, 1048 (9th Cir.2000) (applying California law). Defendant has offered no authority for its related argument that because the underlying violation is one of federal law, a different result obtains. In fact, the Court of Appeals has held that UCL claims may be based on federal statutes, unless the federal statute completely preempts the action. *See Lippitt,* 340 F.3d at 1042. Defendant does not contend that plaintiff's UCL claim is preempted. Moreover, it has not tendered any evidence that by its amendment of 12 U.S.C. § 2604(c), Congress intended to bar pri-

vate enforcement for failure to provide a GFE under 24 C.F.R. § 3500.7(b)(1).

Because Wells Fargo has failed to tender any evidence that it ensured that a GFE was provided to plaintiff, its conduct violated RESPA, which constituted an unlawful business practice under the UCL. *See McKell v. Washington Mut., Inc.,* 142 Cal.App.4th 1457, 1471–1472, 49 Cal. Rptr.3d 227 (holding that a loan transaction is a business practice under the UCL). Plaintiff's motion is therefore granted on this cause of action, to the extent that it is premised on a RESPA violation.

### 2. Violation of California Financial Code Section 50505

In his motion, plaintiff contends that because the defendant violated a provision of RESPA or its regulations, defendant necessarily violated California Financial Code section 50505, which also constitutes an unlawful business practice under the UCL. Mot. at 14. Though this claim is not alleged in plaintiff's complaint and therefore not properly raised on summary judgment, plaintiff's argument is unavailing on its merits. Banks that do business under the authority of or in accordance with a charter issued by the United States are exempted from section 50505. Cal. Fin.Code § 50003(g)(1). Wells Fargo asserts in its opposition that it is a national bank chartered under the United States, to which plaintiff does not respond in his reply. Consequently, plaintiff's motion fails insofar as it seeks summary judgment on this aspect of his UCL claim.

### 3. Violation of Wells Fargo's Own Loan Policies

Finally, plaintiff alleges Wells Fargo's failure to comply with its own loan origination policies and procedures in issuing a loan to plaintiff constitutes an unfair business practice. The UCL makes unlawful business practices that are "unfair" and this standard "is intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *Smith,* 93 Cal.App.4th at 718, 113 Cal.Rptr.2d 399. "The test of whether a business practice is unfair 'involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. The court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Id.*

It is a question of fact whether a business practice is "unfair" under the UCL by being "immoral, unethical or oppressive" or where its harm to the consumer outweighs its benefits. *See, e.g., Paduano v. Amer. Honda Motor Co.,* 169 Cal.App.4th 1453, 1469, 88 Cal.Rptr.3d 90 (2009); *Linear Tech. Corp. v. Applied Materials, Inc.,* 152 Cal.App.4th 115, 134, 61 Cal.Rptr.3d 221 (2007); *Californians for Population Stabilization v. Hewlett–Packard Co.,* 58 Cal.App.4th 273, 286, 67 Cal. Rptr.2d 621 (1997). However, the UCL sounds in equity and therefore there is no right to a jury determination as to whether a defendant's conduct was unfair under the statute; the court must make this factual determination. *Hodge v. Superior Court,* 145 Cal.App.4th 278, 282–85, 51 Cal. Rptr.3d 519 (2006); *see also Steinberg Moorad & Dunn, Inc. v. Dunn,* 136 Fed. Appx. 6 (9th Cir.2005) (holding that it was not harmless error for court to submit to a jury whether defendant's conduct was unfair under the UCL). Thus, the court must determine whether the plaintiff has borne his burden of showing that the facts demonstrate the defendant acted unfairly in violation of the UCL.

Defendants contend that an entity's violation of its own internal policies cannot be an "unfair" business practice under the UCL because it would impose a higher duty on the entity than its fiduciary

or other legal obligations. However, defendant's construction would narrow the UCL so that the only actionable conduct would be that which would otherwise be unlawful or give rise to an independent tort. This interpretation is not supported by the text or purpose of the statute. *See Smith*, 93 Cal.App.4th at 718, 113 Cal. Rptr.2d 399. Moreover, courts have repeatedly held that conduct would give rise to a UCL violation that would not otherwise sound in tort or be unlawful. *See, e.g., Ticconi v. Blue Shield of Cal. Life & Health Ins. Co.*, 160 Cal.App.4th 528, 72 Cal.Rptr.3d 888 (2008); *Buller v. Sutter Health*, 160 Cal.App.4th 981, 74 Cal. Rptr.3d 47 (2008); *Linear Tech. Corp. v. Applied Materials Inc.*, 152 Cal.App.4th 115, 61 Cal.Rptr.3d 221 (2007), *McKell v. Washington Mutual Inc.*, 142 Cal.App.4th 1457, 49 Cal.Rptr.3d 227 (2006). Accordingly, the court cannot agree that plaintiff's UCL claim, to the extent that it is premised on violations of Wells' Fargo's own policies, is untenable as a matter of law.

Plaintiff alleges two violations of Wells Fargo's Broker Origination Guide as the basis for defendant's unfair business practices.[9] First, plaintiff alleges Wells Fargo was obligated to re-disclose all fees to a borrower upon Wells Fargo's receipt of the credit package from the broker, but failed to disclose any loan fees. Second, plaintiff alleges defendant used a broker that employed an unlicenced agent, Bakhtiar, to issue the loan.

 Wells Fargo's "Broker Origination Guide" states that "Wells Fargo Wholesale Lending will re-disclose all fees to borrowers upon receipt of the credit package" from the broker. Haro Decl. Ex. 30 (Wells Fargo's Wholesale Lending Broker

Origination Guide, ¶ 301.07). Wells Fargo argues that this is misleading, as the Guide generally mandates that the broker be the entity that make the loan disclosures to the borrower. A review of the Guide reveals defendant's position is insupportable. Although the Guide provides that the broker make initial disclosures to the borrower, it expressly states that Wells Fargo assumed the responsibility to "re-disclose" all fees in the loan to the borrower. *See id.*

It is not clear from the evidence tendered, however, whether this obligation was met. Plaintiff argues that Wells Fargo did not disclose any loan fees until after escrow closed on the loan. Defendant contends that it did disclose loan fees to plaintiff through La Jolla. *See* Whitehair Decl. Ex. A (Smith Dep. 76:2–10 & Dep. Ex. 20, 26). It appears to the court that where the Guide specifically places the responsibility on Wells Fargo, it is inconsistent to suggest it may be discharged through an agent. On the other hand, the Guide does not directly prohibit discharge through a broker. Under the circumstance, the issue requires further factual development. The court therefore cannot conclude that, at present it cannot decide as a matter of law, had Wells Fargo failed to adhere to the terms of the Guide.

Moreover, even if Wells Fargo did violate this term of its Guide, the court is not persuaded that this constituted "unfair" conduct under the UCL. As described above, the determination of whether conduct is unfair takes the form of a balancing test, whereby the factfinder weighs the harm to the borrower against the utility of the conduct to the lender. *See Smith*, 93 Cal.App.4th at 718, 113 Cal.Rptr.2d 399.

---

**9.** In the complaint, plaintiff alleges defendant's use of a falsified notary certification and failure to verify that the loan would be a material benefit to plaintiff as additional ways defendant conducted unfair business practices under defendant's Broker Origination Guide. These allegations are not discussed in the instant motion.

Here, plaintiff has not shown that defendant's conduct had any adverse impact on him, given that there is evidence that he did not in fact rely on the disclosures made to him during the refinance process. *See* Whitehair Decl. Ex. A (Smith Dep. 64:1–68:25).

 Plaintiff's second allegation under this cause of action is that Wells Fargo violated its own policies by using a broker that employed an unlicensed agent. California Business Code section 10130 declares it unlawful for anyone to act as a real estate broker without first obtaining a license. Section 10131 defines real estate broker as a person who "solicits borrowers or lenders for or negotiates loans or collects payments of performs services for borrowers or lenders or note owners in connection with loans secured directly or collaterally by liens on real property." Cal. Bus. & Prof.Code § 10131(d). Section 10132 defines real estate salesperson as one who, for compensation or in expectation of compensation, is employed by a licensed real estate broker to do certain acts a broker may do. Cal. Bus. & Prof. Code § 10132.

Here, it is undisputed that Bakhtiar was not a licensed real estate broker with the California Departments of Real Estate or Financial Services in 2007. However, there is a factual dispute regarding whether Bakhtiar's acted as a broker or solely as a loan processor. *See* SSUF ¶ 3; Haro Decl. Ex. 10–11; Whitehair Decl. Ex. C (Bakhtiar Depo. at 10:12–21). Additionally, as above, plaintiff has not shown that if Bakhtiar acted as a real estate broker during plaintiff's refinance, this constituted "unfair" business practices under the UCL such that the utility of the practice was outweighed by its harm to plaintiff, as plaintiff has directed the court to no facts indicating the harm he suffered by this practice. *See Smith,* 93 Cal.App.4th at 718, 113 Cal.Rptr.2d 399. Accordingly,

plaintiff's motion must be denied, at present, on this aspect of his UCL claim.

### IV. Conclusion

For the reasons stated herein, plaintiff's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.